# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RANDY YORDY,
      Plaintiff

      v.

SCOTT BROWN, PAUL EVANKO,
BERON F. STEAGER, AND BARRY L.
BRINSER, et al.,
      Defendants

: : : : : : : : : :

No. 1:01-CV-0206

(Judge Kane)

## BRIEF IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

### STATEMENT OF THE CASE

This is a civil action for damages brought pursuant to 42 U.S.C. §§ 1983 and 1985.

Plaintiff is Randy Yordy. The named defendants are members of the Pennsylvania State Police:

Commissioner Paul Evanko and Troopers Scott Brown, Beron Steager and Barry Brinser.

Plaintiff filed his complaint on February 1, 2001. On February 20, 2001, the named

defendants filed a motion to dismiss the complaint pursuant to Rule 12(b)(1) and (b)(6) of the

Federal Rules of Civil Procedure. This brief is submitted in support of defendants' motion to

dismiss the complaint.

### STATEMENT OF FACTS

Plaintiff's complaint alleges that he was "assaulted" by Trooper Brown on February 4,

1999 during the course of a stop of plaintiff's motor vehicle at a location in Dauphin County,

Pennsylvania. (Cplt., ¶¶ 14-16). Plaintiff also alleges that he was "assaulted" at his home later

the same day by Troopers Steager and Brinser. (Cplt., ¶ 19). Finally, plaintiff alleges that

Commissioner Evanko failed to exercise proper control and supervision over Trooper Brown's

activities as a trooper despite, allegedly, knowing that Brown should not have been permitted to continue in police employment or, at least, to interact with members of the public. (Cplt., ¶¶ 22-23). Plaintiff seeks compensatory and punitive damages from defendants for what he claims are violations of his constitutional rights under the Fourth and Fourteenth Amendments to the Constitution. (Cplt., ¶¶ 10, 25-42).

What plaintiff's complaint does not disclose is the fact that he pled guilty on February 15, 2000 in the Court of Common Pleas of Dauphin County, Pennsylvania, to the crimes of aggravated assault, driving under the influence and resisting arrest (two counts) in connection with the stop by Trooper Brown and the subsequent arrest of plaintiff after he fled the scene. As the documents submitted under separate cover reveal,[1] plaintiff was charged with the offenses of criminal attempt homicide, aggravated assault, driving under the influence, recklessly endangering another person and two counts of resisting arrest. (Exhibit A, N.T. 2). As a result of an agreement reached between plaintiff and the District Attorney for Dauphin County, and approved by the Court of Common Pleas of Dauphin County, the criminal attempt homicide charge was dismissed, the aggravated assault charge was amended, and plaintiff pled guilty to the aggravated assault, resisting arrest (two counts), driving under the influence and recklessly endangering charges. (Exhibit A, N.T. 2, 9).

During the colloquy with plaintiff at the guilty plea hearing, plaintiff acknowledged his understanding of the offenses to which he pled guilty (Exhibit A, N.T. 6-9), and specifically

---

[1]While we are relying upon only a limited portion of the transcripts of the guilty plea and sentencing hearings, we have included the entire transcripts in the set of exhibits accompanying this brief in the event the Court desires to review the entire proceeding.

acknowledged that he caused or attempted to cause bodily injury to Trooper Brown and that he resisted arrest by Troopers Brown, Steager and Bunser by getting into a fight with them. (Id.)  At plaintiff's sentencing for these convictions on March 23, 2000, plaintiff informed the Court that he took responsibility for what happened (Exhibit B, N.T. 41), that he acknowledged he had had "a few too many drinks" (id.), and that he had fled the scene of the arrest by Trooper Brown. (Id.).  Plaintiff reiterated, "I'm responsible, I know, for what I did." (Id., N.T. 42).  Plaintiff was sentenced to a term of incarceration and ordered to pay a fine and restitution.  (Exhibit B, N.T. 48; Exhibit C).

Plaintiff's complaint does not plead facts regarding whether an appeal of his convictions was taken or whether any other collateral relief has been sought concerning the convictions.

## QUESTIONS PRESENTED

1.    **Whether plaintiff's claims are barred by the principle of <u>Heck v. Humphrey</u>?**

2.    **Whether plaintiff's claims are precluded by the doctrines of <u>res judicata</u> and collateral estoppel?**

3.    **Whether defendants are entitled to qualified immunity from damages based on plaintiff's convictions for assault and resisting arrest?**

## ARGUMENT

## I.    PLAINTIFF'S CLAIMS ARE BARRED BY THE PRINCIPLE OF <u>HECK v. HUMPHREY</u>.

Plaintiff's complaint seeks to recover damages for what he alleges were assaults by Pennsylvania State Troopers on February 4, 1999 in connection with a stop of plaintiff's motor

vehicle and the subsequent arrest of plaintiff at his home.  Because plaintiff has been convicted of the crimes of aggravated assault and resisting arrest, among others, in connection with this incident, and he has not demonstrated that his convictions have been reversed on appeal, expunged by executive order, declared invalid by a state tribunal or otherwise called into question by a federal court's issuance of a writ of habeas corpus, plaintiff's complaint should be dismissed.  Heck v. Humphrey, 512 U.S. 477, 486-87 (1994); Smith v. Holtz, 87 F.3d 108, 111-113 (3d Cir. 1996).

In Heck v. Humphrey, the Supreme Court held that, in order to recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, the plaintiff in a § 1983 action must demonstrate that his or her conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal or called into question by a federal court's issuance of a writ of habeas corpus.  512 U.S. at 486-87.  See also Smith v. Holtz, supra.  The Court further held that a claim for damages bearing that relationship to a conviction that has not been so invalidated is "not cognizable under § 1983." 512 U.S. at 487.  As the Court instructed:

> [T]he district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

Id.

4

While the plaintiff in Heck claimed a violation of his constitutional rights because of the manner in which the state law enforcement officers had investigated the crime for which he had been convicted, specifically alleging the destruction of exculpatory evidence and production of a false voice identification, id. at 479, the Supreme Court in Heck did not limit its holding to situations in which a plaintiff challenges the procedures used to obtain the conviction. Indeed, the Court specifically provided the following example of a case seeking damages for "other harm" caused by actions whose unlawfulness would render a conviction invalid but which nonetheless should be barred:

> A state defendant is convicted of and sentenced for the crime of resisting arrest, defined as intentionally preventing a peace officer from effecting a *lawful* arrest. He then brings a § 1983 action against the arresting officer, seeking damages for violation of his Fourth Amendment right to be free from unreasonable seizures. In order to prevail in this §1983 action, he would have to negate an element of the offense of which he has been convicted. Regardless of the state law concerning res judicata..., the §1983 action will not lie.

512 U.S. at 486 n.6 (emphasis in original; citations omitted).

Thus, under Heck and its progeny[2] where a §1983 plaintiff seeks to recover damages for a violation of his Fourth Amendment rights in connection with a seizure or an arrest, but he would

---

[2]See, e.g., Sappington v. Bartee, 195 F.3d 234, 237 (5th Cir. 1999); Hudson v. Hughes, 98 F.3d 868, 872-73 (5th Cir. 1996); Conley v. City of Lorain, 1999 WL 1021650 (6th Cir. 1999); White v. Ebie, 1999 WL 775914 (6th Cir. 1999); Reid v. Phoenix Police Dept., 2000 WL 1387441 (9th Cir. 2000); Delaney v. Metelski, 1997 WL 285818 (9th Cir. 1997); Scott v. Lindsey, 1997 WL 756414 (9th Cir. 1997). See also Crooms v. Mercado, 955 F.Supp. 985, 988-91 (N.D. Ill. 1997) (if plaintiff prevailed, trier of fact would have to accept plaintiff's version of incident, which could not have supported conviction for resisting the officer).

5

have to negate an element of a criminal offense of which he has been convicted arising from the same seizure or arrest, he cannot pursue the §1983 action. The claim is simply "not cognizable under § 1983" unless and until his conviction is invalidated. 512 U.S. at 487.

For plaintiff to succeed on his § 1983 claims in this case, he would need to demonstrate that the use of force against him by the state troopers violated the Fourth Amendment's standard of reasonableness. Graham v. Connor, 490 U.S. 386, 394-95 (1989). The standard is an objective one and is to be evaluated under the totality of the circumstances. Id. at 394. The court is to pay careful attention to the facts and circumstances of each case, including the severity of the crime at issue, whether the suspect poses a threat to the safety of the officers or others, and whether he is actively resisting arrest. Id. See also Abraham v. Raso, 183 F.3d 279, 289 (3d Cir. 1999). A police officer making an arrest may use a reasonable amount of force if necessary to effectuate a lawful arrest. Graham, 490 U.S. at 396. The determination of reasonableness, as an objective one, need not be determined by a jury in all cases; a court may make the determination that the officer's use of force was objectively reasonable under the circumstances. Abraham v. Raso, 183 F.3d at 290; Scott v. Henrick, 39 F.3d 912, 915 (9th Cir. 1994).

Against this background of the standards applicable to plaintiff's Fourth Amendment claims, it is apparent that his § 1983 claims should be dismissed under Heck. Plaintiff pled guilty in the Court of Common Pleas of Dauphin County to aggravated assault, resisting arrest (two counts), and driving under the influence.[3] Plaintiff thus acknowledges that he attempted to cause

---

[3]As plaintiff's conviction records demonstrate, the charge of recklessly endangering another person was merged with the count charging him with aggravated assault, and the charge of criminal attempt homicide was dismissed.

6

or intentionally or knowingly caused bodily injury to Trooper Brown, Pa. Stat. Ann. tit. 18, § 2702(a)(3), and that he acted with intent to prevent his lawful arrest, which created a substantial risk of bodily injury to the troopers, or he employed means justifying or requiring substantial force to overcome his resistance to the arrest. Pa. Stat. Ann. tit. 18, § 5104. For plaintiff to succeed on his § 1983 claims against the arresting troopers in this case, he would have to demonstrate that, under the totality of circumstances, it was not objectively reasonable for the troopers to use physical force to control and arrest a person who, by his guilty pleas, acknowledges he is guilty of aggravated assault and resisting arrest. In effect, the trier of fact would have to believe that plaintiff was, as he alleges, "assaulted" without justification. Such a decision would be incompatible with plaintiff's acknowledgments of his guilt and acceptance of responsibility for the crimes for which he was convicted.

Plaintiff may argue that his situation is controlled by Nelson v. Jashurek, 109 F.3d 142 (3d Cir. 1997). Nelson, however, is distinguishable and thus should not be followed. In Nelson, the Court of Appeals held that a Pennsylvania conviction for resisting arrest did not preclude the plaintiff's § 1983 action for excessive force during the arrest. 109 F.3d at 145-46. The Court focused on the state court's charge to the jury in the underlying criminal case in which the trial judge had informed the jury that if the plaintiff's actions "did not justify substantial force by [the township police officer], you must find Mr. Nelson not guilty." 109 F.3d at 145. The jury had found Nelson guilty and, the Court reasoned, must have concluded that the officer was justified in using "substantial force." Id. Notwithstanding the apparent inconsistency, the Court of Appeals concluded that a finding that the officer was justified in using "substantial force" did not mean he

7

was justified in using an "excessive" amount of force. Id. The basis for the Court's conclusion was its view that there could be "substantial" force which is objectively reasonable and "substantial" force which is excessive and unreasonable, thus not necessarily challenging the basis for the underlying conviction. Id.

While we submit that the Court in Nelson applied the Heck principle overly narrowly, the fact remains that there are significant differences between the situation in Nelson and this case. Unlike Nelson, the plaintiff here pled guilty to both aggravated assault and resisting arrest. Thus, not only did he acknowledge his guilt of the elements of two resisting arrest counts, but he also acknowledged his guilt of the crime of aggravated assault. Under Pennsylvania law, the offense of aggravated assault upon a police officer requires a showing that plaintiff: 1) attempted to cause or intentionally or knowingly caused 2) bodily injury 3) to a police officer 4) making or attempting to make a lawful arrest. Commonwealth v. Petaccio, 764 A2d 582, 585 (Pa. Superior Ct. 2000). The fact that the word "serious" does not appear in the bodily injury element was not meant to depreciate the severity of the offense to a point where it encompasses relatively harmless physical contact with an officer. Id., quoting Commonwealth v. Wertelet, 696 A.2d 206, 211-12 (Pa. Superior Ct. 1997). It would be incompatible for the Court to conclude that it was not objectively reasonable for the trooper to use force to overcome someone who admits to attempting to cause or knowingly or intentionally causing bodily injury to the trooper . For plaintiff to succeed, the trier of fact would have to believe that he did not attempt to cause or intentionally cause bodily injury, that in essence he was assaulted by the trooper rather than the cause of the use of force, for which he accepted responsibility at his guilty plea and sentencing. Accepting

8

plaintiff's version would require the trier of fact to find that he was not responsible for the

officer's use of force upon him, which would imply the invalidity of his conviction. See Crooms

v. Mercado, 955 F. Supp. at 988.    Accordingly, plaintiff's claims are barred by the principle of

Heck v. Humphrey, 512 U.S. 477 (1994).

## II.    PLAINTIFF'S CLAIMS ARE BARRED BY THE DOCTRINES OF RES JUDICATA AND COLLATERAL ESTOPPEL.

Even if plaintiff's civil rights claims are not precluded by Heck v. Humphrey, they

nonetheless should be dismissed because they are barred by the doctrines of res judicata and

collateral estoppel.

Federal courts consistently apply the doctrines of res judicata and collateral estoppel to

state court decisions. Allen v. McCurry, 449 U.S. 90, 95 (1980); Morris v. Pushart, et al., M.D.

Pa. No. 1:CV-99-1432 (January 12, 2001), slip op. at 5 (copy attached). Once a court has decided

an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the

issue in a suit on a different cause of action involving a party to the first case. Allen, 449 U.S. at

93; Morris, slip op. at 5. Preclusion principles apply to federal civil rights actions filed after a

criminal conviction in state court. Allen, 449 U.S. at 105.

The preclusive effect of a state court judgment in a subsequent federal proceeding is

determined by the law of the state in which the judgment was rendered. Marrese v. American

Academy of Orthopedic Surgeons, 470 U.S. 373, 380-81 (1985). Under Pennsylvania law, an

issue is precluded from subsequent litigation if the following criteria are met:  1) the issue decided

in the prior case was identical to the one presented in the later action; 2) there was a final

9

judgment on the merits; 3) the party against whom the plea is asserted was a party or in privity with a party to the prior case; and 4) the party against whom it is asserted had a full and fair opportunity to litigate the issue in question in the prior action. Gregory v. Chehi, 843 F.2d 111, 121 (3d Cir. 1988), quoting Safeguard Mutual Insurance Co. v. Williams, 463 Pa. 567, 345 A.2d 664, 668 (1975).

All the criteria for preclusion are met in this case. Plaintiff's guilty pleas in state court resulted in his convictions of the crimes of aggravated assault and resisting arrest. The convictions were a final judgment on the merits of the question whether plaintiff engaged in the actions to which he pled guilty, plaintiff was the same person who entered the guilty pleas, and he had a full and fair opportunity to litigate the question of his behavior in state court but, instead of proceeding to trial, elected to plead guilty to aggravated assault and resisting arrest. Thus, on their face, the last three of the four Safeguard criteria for preclusion are clearly met in this case.

The final criterion — whether the issue in the two cases is the same — also is satisfied. As the Court recognized in Morris v. Pushart, the binding determinations made by the state court in convicting plaintiff of the criminal offenses should not be relitigated in this action. By his guilty pleas, plaintiff accepted responsibility for causing the events which resulted in his convictions. Plaintiff cannot challenge the lawfulness of his arrest or whether he intended to cause bodily injury to the arresting trooper or whether he engaged in actions that required substantial force to overcome his resistance to arrest. The time to have challenged those issues was in the Court of Common Pleas, not in this Court. Resolution of the issues against plaintiff in

10

the Court of Common Pleas was essential to his convictions.  Under preclusion principles, he

cannot relitigate the issues in this case.  <u>Morris v. Pushart</u>, Slip op. at 5-7, and cases cited.

For these reasons, defendants' motion to dismiss should be granted.

### III.  DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY FROM DAMAGES BASED ON PLAINTIFF'S CONVICTIONS FOR ASSAULT AND RESISTING ARREST.

As an alternative reason for dismissal of the complaint, defendants submit that they are

entitled to the defense of qualified immunity from damages.  On this alternative basis, the Court

may grant defendants' motion to dismiss the complaint.

Qualified immunity protects government officials performing discretionary functions from

civil liability provided that their conduct does not violate clearly established rights of which a

reasonable person would have known.  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  The

doctrine recognizes "the need to protect officials who are required to exercise their discretion and

the related public interest in encouraging the vigorous exercise of official authority." <u>Id.</u> at 807

(internal quotations and citation omitted).  As the Court of Appeals for the First Circuit has stated,

in the kinds of situations presented by the present case,  "the Supreme Court intends to surround

the police who make these on-the-spot choices in dangerous situations with a fairly wide zone of

protection in close cases." <u>Roy v. Inhabitants of City of Lewiston</u>, 42 F.3d 691, 695 (1st Cir.

1994).

The defense of qualified immunity should be resolved before trial if possible.  <u>See Hunter</u>

<u>v. Bryant</u>, 502 U.S. 224 (1991).  The Court may determine applicable law and whether it was

11

clearly established at the time of the events in question.  Rogers v. Powell, 120 F.3d 446 (3d Cir.

1997); Anciero v. Cloutier, 40 F.3d 597 (3d Cir. 1994).  Making the decision pretrial avoids

excessive disruptions of government that extensive discovery can cause and permits the resolution

of legally insubstantial claims without the time and expense associated with a rial.  Id.  In

determining whether the defendants are entitled to claim qualified immunity, the court should

engage in a three-part inquiry: 1) whether plaintiff has alleged a violation of a protected right; 2)

whether the right to have been violated was clearly established in the existing law at the time of

the claimed violation; and 3) whether a reasonable official in the defendant's position should have

known that the alleged action violated the plaintiff's rights.  Rouse v. Plantier 182 F.3d 192, 196-

97 (3rd Cir 1999).

        As discussed in previous sections of this brief, it cannot be objectively unreasonable for a

law enforcement officer to use substantial force to effectuate an arrest when the arrestee — here,

the plaintiff — acknowledges his intent to cause bodily harm to the officer or his intent to create a

substantial risk of bodily injury to the officer by resisting a lawful arrest.  By plaintiff's own

admission, he engaged in activity that intended to cause bodily harm to the troopers or, at a

minimum, create a substantial risk of bodily injury.  The use of physical force by arresting

officers to overcome plaintiff's aggravated assault and resisting arrest should not be regarded as

unreasonable.

Plaintiff may attempt to argue that qualified immunity should not be available in a Fourth Amendment force case.[4] In Anderson v. Creighton, 483 U.S. 635 (1987), the Supreme Court rejected the argument that conduct that violates the Fourth Amendment's reasonableness standard necessarily is "unreasonable" for purposes of qualified immunity. Id. at 643-44. For purposes of qualified immunity, there is no principled distinction between claims of unreasonable force and other types of conduct alleged to be unreasonable under the Fourth Amendment. Just as there is no inherent conflict between an unreasonable search or seizure and qualified immunity, there is no inherent conflict between excessive force and qualified immunity. Id. It is possible for an officer to violate the Constitution but to do so under a reasonably mistaken belief that his conduct is lawful. When that happens, the officer is entitled to immunity. Malley v Briggs, 475 U.S. 335, 341-43 (1986).

The notion of "reasonably unreasonable" uses of force is no more paradoxical than the notion of "reasonably unreasonable" searches and seizures embraced by the Supreme Court in Anderson v. Creighton. As the Court stated: "...Harlow clearly expressed the understanding that the general principle of qualified immunity it established would be applied *across the board*." 483 U.S. at 645 (emphasis added). Excessive force cases are no exception to the rule. If officers who make reasonable, albeit mistaken, judgments about the necessity of force can be categorically excluded from the protection of qualified immunity, other government employees exercising

---

[4]The issue whether qualified immunity is available as a separate defense to a claim of excessive force under the Fourth Amendment is presently before the Supreme Court of the United States in Saucier v. Katz, U.S. No. 99-1977. The Court granted a petition for writ of certiorari to the Ninth Circuit's decision in Katz v. United States, 194 F.3d 962 (9th Cir. 1999), and is scheduled to hold argument on March 20, 2001.

13

discretionary functions could fear the same result. This would be contrary to the purpose of the qualified immunity defense.

The complaint should be dismissed on the basis of qualified immunity from damages.[5]

## CONCLUSION

For the above-stated reasons, defendants' motion to dismiss the complaint should be granted.

Respectfully submitted,

**D. MICHAEL FISHER**
**Attorney General**

By: _____
**GREGORY R. NEUHAUSER**
**Senior Deputy Attorney General**

**SUSAN J. FORNEY**
**Chief Deputy Attorney General**
**Chief, Litigation Section**

**OFFICE OF ATTORNEY GENERAL**
**15th Floor, Strawberry Square**
**Harrisburg, PA   17120**
**717-787-8106**
**Date:  March 12, 2001**

---

[5]We recognize that plaintiff's claim against Commissioner Evanko is not the same type of claim as the excessive force claim against the arresting troopers, Brown, Steager and Brinser. Plaintiff claims that Commissioner Evanko failed to exercise proper disciplinary control and supervision over Trooper Brown. These allegations failed to state a claim upon which relief could be granted in 1999, when Brown allegedly acted, so Commissioner Evanko is entitled to qualified immunity from damages as well, albeit on a different basis. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (liability may not be based on respondeat superior); Chinchello v. Fenton, 805 F.2d 126, 134 (3d Cir 1986) (no affirmative duty to train, supervise and discipline subordinates).

OFFICE OF ATTORNEY GENERAL

IN THE UNITED STATES DISTRICT COURT LITIGATION SECTION
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ISAAC LOUIS MORRIS,                 :   CIVIL NO. 1:CV-99-1432

    Plaintiff                  :
                                    :
    v.                         :
                                    :          **FILED**
CHRISTOPHER PUSHART,                :       HARRISBURG, PA
JOSEPH CHRISTALDI and               :
GARY WILLIAM MAINZER,               :       JAN 1 2 2001
                                    :
    Defendants                 :   MARY E. D'ANDREA, CLERK
                                        Per_____
                                              Deputy Clerk

### MEMORANDUM

Before the court is Defendants' motion for summary judgment. Defendants filed said motion and their supporting brief on November 21, 2000. Plaintiff did not file a timely brief in opposition, and on December 13, 2000, this court ordered Plaintiff to file a brief in opposition by December 28, 2000. Plaintiff did not file a response by December 28, 2000, and the motion is ripe for disposition.

I.        **Background**

The following facts are undisputed except where noted:[1] The instant action arises out of Plaintiff's arrest which occurred on January 11, 1999. On that day Plaintiff and two other individuals were seated in Plaintiff's vehicle which was stopped on Maclay Street in Harrisburg, Pennsylvania. Defendants contend that Plaintiff was in the driver's seat of that car. (Def. Statement of Material Facts, hereinafter "Def. Facts," at ¶ 16.) Plaintiff has testified both at his criminal trial and

---

[1]These facts are gleaned from Defendants' statement of material facts submitted to the court in accordance with Local Rule 56.1. As Plaintiff has not filed his own statement of material facts in opposition to Defendants' motion, the court has confirmed the validity of Defendants' statement of facts through referral to Defendants' supporting documentation.

in a deposition that he was not the driver of the vehicle. (Doc. in Supp. Mot. for Summ. Jud., hereinafter "DSSJ," at 39-44, 90.) Defendant State Trooper Christopher Pushart directed the driver of Plaintiff's car to proceed forward, and when the vehicle did not move, Pushart approached it. Pushart smelled alcohol and asked the driver to get out of the car, but the vehicle accelerated to leave the scene.

Defendants contend that another State Trooper, Defendant Joseph Christaldi, had to jump out of the way of Plaintiff's vehicle and was struck in the hand by the vehicle's side mirror. (Def. Facts at ¶ 14.) Pushart got into his own vehicle and pursued Plaintiff's car until it came to a stop on Verbeke Street. Plaintiff contends that the actual driver of the car then fled the scene while Plaintiff exited the vehicle. (DSSJ at 44.) Citing a criminal complaint that was subsequently filed against Plaintiff, Defendants contend that Plaintiff "got out of the driver's side door." (Def. Facts at ¶ 16.) However, the criminal complaint only states that Plaintiff exited the vehicle; there is no indication from which door he exited. (DSSJ at 114.)

After Plaintiff got out of the car Pushart told him to get on the ground. Plaintiff walked toward Pushart and then dropped to his knees. Pushart then pushed Plaintiff to the ground and handcuffed him. The events immediately following the restraint of Plaintiff are in dispute. Defendants contend that when placing Plaintiff in the car, Pushart simply banged his head on the door. (Def. Facts at ¶ 23.) Plaintiff describes Pushart slamming his head into the rear hood of the car, pushing him into the car, being hog-tied with rope, having the car door slammed on his toes, being kicked in the buttocks, causing him to defecate on himself, being kneed in the back, and being called racial slurs. (DSSJ at 47-49, 58.)

Plaintiff was then taken to Police Troop H Headquarters in Harrisburg, Pennsylvania, where he was carried into the police station. Defendants describe Plaintiff's demeanor as follows: "plaintiff was extremely disorderly, using extremely foul language and directing expletives at everyone in the patrol room. It was apparent that he had defecated on his clothes. He was very combative and, despite the fact that he was restrained, was attempting to do everything he could to get away and/or make life hard for those bringing him into the room." (Def. Facts at ¶ 26.)

Plaintiff contends that he was carried into the police station, dropped on the floor, and bolted to the floor. (DSSJ at 59-91.) According to Plaintiff, it was Defendants Christaldi, Pushart, and Mainzer that carried him into the police station. (DSSJ at 61.) Defendants assert that Plaintiff then kicked Mainzer in the chin as Mainzer tried to remove Plaintiff's restraints; however, Plaintiff contends that he did not kick Mainzer. (DSSJ at 91-92.)

Once inside the police station, Plaintiff says that his mouth was taped because he was screaming in pain. (DSSJ at 60.) Plaintiff was eventually taken to Harrisburg Hospital that same night. The treating physician's report states that an examination of Plaintiff's head "revealed 2-3 linear exconations that were fairly deep to the left forehead." (DSSJ at 117.) Ointment and a Band-Aid were applied to Plaintiff's wound. Plaintiff testified during his deposition that as a result of the Troopers' conduct on the night of his arrest, he has suffered from headaches, back pain, and he lost a tooth. (DSSJ at 66-68.)

On August 3, 1999, after a bench trial before the Honorable Clarence C. Morrison, Plaintiff was found guilty of several crimes for the events that occurred

on January 11, 1999.  Specifically, for the events leading up to his arrest, Plaintiff was convicted of driving under the influence of alcohol or a controlled substance, driving while operating privilege is suspended or revoked, and reckless driving. Plaintiff was also convicted of aggravated assault, simple assault, recklessly endangering another person, and criminal mischief which arose out of the following actions by Plaintiff:  dragging Pushart during his initial traffic stop, hitting Christaldi with the side view mirror of his vehicle, kicking Mainzer in the chin, attempting to run over Christaldi, and kicking out the right rear window of a marked State Police patrol vehicle.

Plaintiff filed the instant action on August 10, 1999.  Plaintiff proceeds pro se on his claims and seeks monetary damages for "brain damage" received during his arrest on January 11, 1999.  He also seeks to have his vehicle replaced, which he contends was totaled during towing, as well as renumeration for all medical and legal bills and a public apology.  Following discovery, Defendants moved for summary judgment on November 21, 1999.

II.       **Legal Standard: Motion for Summary Judgment**

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  A factual dispute is "material" if it might affect the outcome of the suit under the applicable law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis which

4

would allow a reasonable fact-finder to return a verdict for the non-moving party. See id. at 249. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. See White v. Westinghouse EEC. Co., 862 F.2d 56, 59 (3d Cir. 1988).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in her complaint; instead, he must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, and designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (internal quotations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden at trial." Id.

**III.**        **Discussion**

As a preliminary matter, this court must give preclusive effect to the state court's findings in Plaintiff's criminal trial. Federal courts consistently apply the doctrines of res judicata and collateral estoppel to state court decisions. Allen v. McCurry, 449 U.S. 90, 95 (1980). "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." Id. at 93. In Allen, the Supreme Court held that the doctrine of collateral estoppel applies to civil rights actions brought pursuant to § 1983. Id. at

5

105; see also Holsey v. Bass, 519 F. Supp. 395, 414 (D. Md. 1981) ("There is nothing new in the concept that full litigation of an issue in a criminal proceeding forecloses subsequent relitigation of the issue in a civil proceeding when resolution of the issue was essential to the conviction.").

In the present action, certain facts that might otherwise be at issue were fully litigated during Plaintiff's criminal trial because their determination was essential to the conviction. First, the trial court made a factual finding that Plaintiff was driving his vehicle on the night in question. This determination of fact was necessary to support Plaintiff's convictions for driving under the influence, driving with a suspended licence, and reckless driving. (DSSJ at 98.) The trial court also determined that Plaintiff "did drag [Pushart] with his vehicle approximately 20 feet or more" and "did attempt to run over [Christaldi] with his vehicle," as Plaintiff was convicted of attempted serious bodily injury and reckless endangerment. (DSSJ at 103.) Furthermore, Plaintiff's conviction for causing bodily injury required a finding that Plaintiff "did intentionally kick [Mainzer] on the underside of his chin." (DSSJ at 103.) Finally, the court had to make a determination that Plaintiff "did kick out the window damaging the window and frame of the patrol unit" to find him guilty of criminal mischief. This court proceeds with its consideration of Defendants' motion recognizing that these findings of fact must be given preclusive effect.

Essentially, Plaintiff seeks redress pursuant to 42 U.S.C. § 1983 for what he contends was excessive force used by the Defendants in effectuating his arrest. In Graham v. Connor, 490 U.S. 386, 395 (1989), the Supreme Court held that the proper framework for analyzing claims of excessive force in the course of

6

an arrest is the Fourth Amendment's "reasonableness" standard. A determination of reasonableness requires a balancing of the nature and quality of intrusion into a plaintiff's Fourth Amendment interests against the governmental interests at stake. Id. at 396. The right to make an arrest necessarily carries the right to use some physical force and "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers" constitutes excessive force. Id. (citing Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)).

The test for reasonableness "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest by flight." Id. The reasonableness test is applied from the perspective of a reasonable officer at the scene. Id. at 397. Of these three factors, the one most strongly implicated in the instant case is the threat posed by Plaintiff to the arresting officers and others. The trial court found that Plaintiff initially dragged Pushart with his vehicle and attempted to run over Christaldi.

Plaintiff's volatile behavior continued when he was placed in Pushart's vehicle. Plaintiff kicked out the window of the car, showing that any attempts to subdue Plaintiff had failed. Upon being taken into the police station, Plaintiff still had not calmed down. There he kicked Defendant Trooper Mainzer in the chin when Mainzer tried to remove the restraints.

These binding factual determinations compel this court to determine that Plaintiff remained a threat to the safety of the troopers throughout the entire exchange. Additionally, the other two factors described in Graham are implicated in

7

this action.  Specifically, Plaintiff was actively resisting arrest by flight and was eventually convicted of serious crimes for his conduct on January 11, 1999.

Defendants have sustained their burden of showing that no genuine issue of material fact exists upon which a reasonable juror could find for the Plaintiff.  Plaintiff has failed to respond to Defendants' motion, but the court has conducted its own review of the record and holds as a matter of law that Defendants' conduct toward Plaintiff on January 11, 1999, was not objectively unreasonable.  Accordingly, summary judgment will be granted in favor of the Defendants.  An appropriate order will issue.

SYLVIA H. RAMBO
United States District Judge

Dated:  January ⁄7 , 2001.

8

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ISAAC LOUIS MORRIS,                 :          CIVIL NO. 1:CV-99-1432

      Plaintiff                 :

        v.                    :                    **FILED**
                                 HARRISBURG, PA

CHRISTOPHER PUSHART,                :
JOSEPH CHRISTALDI and                              JAN 1 2 2001
GARY WILLIAM MAINZER,               :

      Defendants                :          MARY E. D'ANDREA, CLERK
                                Per _____
                                    Deputy Clerk

## ORDER

    In accordance with the forgoing memorandum of law, **IT IS HEREBY**

**ORDERED THAT:**

    (1)  Defendants' motion for summary judgment is **GRANTED**;

    (2)  The Clerk of Court shall enter judgment in favor of Defendants and

against Plaintiff and close the file.

                                _____
                                  SYLVIA H. RAMBO
                                  United States District Judge

Dated: January _12_, 2001.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RANDY YORDY,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:01-CV-0206** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **SCOTT BROWN, PAUL EVANKO,** | : | |
| **BERON F. STEAGER, AND BARRY L.** | : | |
| **BRINSER, et al.,** | : | |
| **Defendants** | : | |

### CERTIFICATE OF SERVICE

I, **GREGORY R. NEUHAUSER,** Senior Deputy Attorney General for the

Commonwealth of Pennsylvania, Office of Attorney General, hereby certify that on **March 12,**

**2001,** I caused to be served a true and correct copy of the foregoing document **Brief in Support**

**of Defendants' Motion to Dismiss the Complaint** by depositing it in the United States mail,

first-class postage prepaid to the following:

Spero T. Lappas, Esquire
205 State Street
Harrisburg, PA  17101-0808


**GREGORY R. NEUHAUSER**
**Senior Deputy Attorney General**