SERRATELLI, SCHIFFMAN, BROWN AND CALHOON, P.C.
2080 Linglestown Road
Suite 201
Harrisburg, Pennsylvania   17110-9670
Telephone (717) 540-9170
Fax (717) 540-5481
By:  SPERO T. LAPPAS, Esquire
     Pa. Supreme Court ID no. 25745
     slappas@ssbc-law.com

FILED
HARRISBURG, PA

JAN 1 7 2003

MARY E. D'ANDREA, CLERK
Per_____
        Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RANDY YORDY, | : | NO.: 1:01-CV-0206 |
| Plaintiff | : | |
| | : | CIVIL ACTION LAW |
| v. | : | |
| | : | JUDGE KANE |
| SCOTT BROWN, PAUL EVANKO, | : | |
| BERON STEAGER, AND BARRY L. | : | |
| BRINSER, et. al., | : | |
| Defendants | : | JURY TRIAL DEMANDED |

PLAINTIFF'S MOTION FOR A NEW TRIAL

AND NOW, January 17, 2003 comes the Plaintiff Randy Yordy, by
and through his attorney SPERO T. LAPPAS, Esquire, and moves this
court to order a new trial in the above captioned case, and
presents the following grounds for this motion:

SERRATELLI, SCHIFFMAN BROWN AND CALHOON, P.C.
By:  SPERO T. LAPPAS, Esquire

Page 1

1.    The Honorable Trial Court erred in granting the Defendants' Motion in Limine.

2.    The Honorable Trial Court erred in excluding at trial the evidence of defendant Brown's prior disciplinary record and evidence of his prior misconduct, including but not limited to the following:

    a.    Defendant Brown's record prior to his assault on Randy Yordy caused one State Police disciplinary officer to comment (as early as June 25, 1997) that "A review of Trooper Scott A. Brown's personnel record reveals repeated violations of Department rules and regulations. <u>These recurrent infractions raise serious questions as to Trooper Brown's willingness to conform to acceptable standards of behavior as established by the Department.</u>" Memorandum of Captain Larry Williams, Exhibit 1 hereto. (Emphasis added.)

    b.    On or about April 9, 1998, while Defendant Brown was assigned to "desk duties" he engaged in an act of "unwelcomed" and "unnecessary" touching of a female civilian State Police employee named Christine Kosh. He was suspended for one day, but his suspension was reduced to a written reprimand by a labor relations arbitrator. The arbitrator

ruled that the Defendant's actions were "inappropriate" and that his testimony (that his assault on Ms. Kosh was the result of accidently tripping and catching himself by grabbing hold of her shoulders) was "implausible" especially because Ms. Kosh testified that he had touched her twice. Exhibit 2 hereto, page 7. Brown's further defenses consisted of the arguments that he was the victim of a State Police "conspiracy" (<u>Id</u>. at p. 10), that he was the target of "entrap[ment]" (page 11), and that the State Police investigation of his misconduct constituted the wrongful "turning on `on of their own'." (Page 10).

c.    On August 2, 1997, the Defendant was investigating an alleged case of bicycle theft by a juvenile. During that investigation the defendant engaged in such behavior with the juvenile's family that a State Police official Disciplinary Report found him to have "used foul language, yelled, threatened and lost composure." Exhibit 3 hereto. Although his discipline for this misconduct was sustained, Brown thought that the whole thing was "exaggerated" and that his bad conduct was (as hard as it may be for us to understand the cause-and-effect relationship

which seems to make sense to the Defendant) the result of "strep throat," clinical depression, and the fact that his misconduct took place on a "hot and humid day."  See, Statement of Scott Brown, December 15, 1997, attached hereto as Exhibit 4, page 2.

d.  On April 10, 1996, the defendant was driving through the Borough of Lemoyne with his wife and child when his car was rear-ended by one Rodelio Garcia in a traffic jam.  There were no injuries. The defendant was off duty and in civilian clothes. The Defendant pursued Garcia in traffic, got out of his car, jumped through Garcia's sun roof and (in the words of the State Police officer who investigated this incident) started "pistol whipping him" while Garcia was still driving. Brown's actions risked a second, more serious traffic accident.  An impartial eyewitness reported that Brown was pointing his handgun at Garcia and "roughing him up pretty good."  During this incident, Brown never told Garcia that he was under arrest, and he subjected him to a barrage of obscenity as well as the physical assaults.  (See Summary report of Lieutenant Francis Grolemund, Jr.

attached hereto as Exhibit 5.

e.  When questioned about the Garcia incident, Brown denied that he had done anything wrong.  He later admitted to Lt. Grolemund that his denial that of was "untruthful and a lie."  Brown "stated that he lied to avoid getting into trouble."  Lt. Grolemund concluded that:

> "The inconsistent statements made by Brown during this investigation and <u>his admission of a deliberate and intentional lie</u> to the investigating officer casts doubt on Brown's credibility on all relevant parts of this investigation in which he is contradicted by evidence or other testimony."

Exhibit 6 hereto, emphasis added.

f.  The State Police suspended Defendant Brown for ten days without pay for violations of regulations dealing with Unbecoming Conduct, Courtesy, Use of Firearms, Police Action Off Duty, and Use of Deadly Force.  On May 8, 1997, Brown defended himself by stating that he called Garcia a "motherfucker," drew his weapon on Garcia, and climbed through the sun-roof after him.  Brown stated that he "regret[s]" his "decision" in pursuing this course of action, but stated that he was taking "proactive steps to correct my shortcomings," that he has

"grown and changed" since the Garcia incident, that he is no longer "the same man as [he] was" during the Garcia incident, and that he was taking psychiatric medication and therapy to address his apparent mental health problems and family issues. See, Statement of Scott Brown, attached hereto as Exhibit 7.

g.   After the Garcia incident, Brown filed a civil insurance claim against his assault victim and caused his criminal prosecution, just as he did in the Randy Yordy case.

3.   The Honorable Trial Court erred by excluding the evidence of Brown's pre-February 4, 1999, and further by ordering that the Plaintiff's FRE 608 inquiry into specific prior acts of Brown's dishonesty had to comply with the in limine order.

4.   The Honorable Trial Court erred by excluding at trial the evidence of defendant Brown's disciplinary and employment record subsequent to the incident of February 4, 1999. Specifically, though without limitation:

a.   The Honorable Trial Court erred in excluding evidence of a termination memorandum issued to Brown by the Pennsylvania State Police on or about October 10, 2002. This memorandum (attached hereto as Exhibit 8) described a violently profane and

disruptive outburst which caused additional discipline to Scott Brown and led to his separation from the Pennsylvania State Police.

b.  The Honorable Trial Court denied the Plaintiff's request that defendant Brown's current employment status be described to the jury in light of the fact that defense counsel was suggesting to the jury that the defendant was a member in good standing of the Pennsylvania State Police by addressing him as "Trooper."

5.  Defense counsel improperly addressed the defendant as "Trooper" while defendant Brown was, as of the time of trial, either terminated from the state police or on suspension without pay, and thus it was not appropriate for him to be addressed as Trooper, or to acknowledge that form of address.

6.  Further, at the conclusion of defendant Brown's testimony, and perhaps at other times as well, the Court addressed defendant Brown as "Trooper."

7.  All of the above described grounds are sufficient, each alone and any two or more in combination with one another, to warrant the grant of a new trial.

8.  *WHEREFORE, the Plaintiff requests that the court order a new trial against the Defendants in his case.*

*SERRATELLI, SCHIFFMAN BROWN AND CALHOON, P.C.*
*By:  SPERO T. LAPPAS, Esquire*

RESPECTFULLY SUBMITTED,

SERRATELLI, SCHIFFMAN, BROWN AND CALHOON, P.C.

By: _____

SPERO T. LAPPAS, Esquire
Pa. Supreme Ct. ID no. 25745
2080 Linglestown Road
Suite 201
Harrisburg, PA  17110-9670
(717) 540-9170
ATTORNEYS FOR THE PLAINTIFF

*INDEX OF EXHIBITS*

1.   Memorandum of Captain Larry Williams, June 25, 1997.

2.   April 26, 1999 Arbitration report.

3.   December 10, 1997 Disciplinary Report.

4.   Statement of Scott Brown, December 15, 1997.

5.   Summary report of Lieutenant Francis Grolemund, Jr.

6.   General Investigation Report, May 9, 1997.

7.   Statement of Scott Brown, May 8, 1997.

8.   Termination memorandum.

COMMONWEALTH OF PENNSYLVANIA

June 25, 1997

**CONFIDENTIAL**
Disciplinary Record -
Trooper Scott A. Brown

TO:             Commanding Officer, Troop L, Reading
                **ATTENTION: Trooper Brown**

FROM:           Captain Larry Williams  ℒω
                Disciplinary Officer

REFERENCES:    (a)  General Investigation Report BPR-9534.

               (b)  General Investigation Report BPR-8764.

1.  Disciplinary Action Reports initiated as a result of References (a) and (b) have been evaluated and the decision in each of these incidents has been rendered.

2.  A review of Trooper Scott A. Brown's personnel record reveals repeated violations of Department rules and regulations.  These recurrent infractions raise serious questions as to Trooper Brown's willingness to conform to acceptable standards of behavior as established by the Department.

3.  It is the purpose of this memo to advise Trooper Brown that any further disciplinary action against him may result in a recommendation for court-martial.  Trooper Brown should be cautioned to consider the ramifications of his continued employment with the State Police. He should further be advised that if court-martial is recommended, one of the hazards to be faced is that of dismissal from the Department.

4.  Any questions on this matter may be referred to me.

RECEIVED BY _TPR. S. A. Brown_____ DATE _07/16/97_____

cc: Disciplinary Officer


PLAINTIFF'S
EXHIBIT



IN THE MATTER OF ARBITRATION BETWEEN

COMMONWEALTH OF PENNSYLVANIA,
PENNSYLVANIA STATE POLICE

**OPINION AND AWARD**

AND

(Trooper Scott Brown)
One Day Suspension

PENNSYLVANIA STATE TROOPERS
ASSOCIATION

GRIEVANCE:    99-DO-0172 Scott Brown
PSTA
PA State Police L-102

HEARING:    February 24, 1999
Harrisburg, Pennsylvania

BEFORE:    Lynne M. Mountz
Impartial Arbitrator

APPEARANCES:    Commonwealth of Pennsylvania, Pennsylvania State Police:
Dale J. Wetzel

Pennsylvania State Troopers Association:
Gary M. Lightman, Esquire

        The Parties selected the undersigned Arbitrator to hear and decide the instant dispute. A hearing was held in Harrisburg, Pennsylvania on February 24, 1999, at which time both Parties were afforded full opportunity to present testimony, examine and cross-examine witnesses and introduce documentary evidence.

        The Parties waived their right to make oral argument and elected to file post-hearing briefs with the Arbitrator. The record in this matter was closed on March 25, 1999 upon receipt of the briefs.



PLAINTIFF'S
EXHIBIT
2

## Background

The instant dispute results from a Grievance filed on behalf of Trooper Scott A. Brown (Grievant) on November 13, 1998 (Joint Ex. 2, p. 5), appealing a decision by the Pennsylvania State Police (Department) to suspend him for one (1) day without pay.

The Grievant is a member of the Pennsylvania State Police.  The incident giving rise to his suspension occurred during the evening of April 9, 1998.  At that time, the Grievant was a Trooper assigned to the Jonestown Station of Troop L.   On the evening of April 9, 1998, the Grievant was working patrol zones.  At some point during the evening, Corporal Myra Taylor, the shift supervisor, instructed the Grievant to return to the station to assist Police Communications Operator (PCO) Christine Kosh with desk duties.  The Grievant complied with that instruction.

The Grievant and PCO Kosh were alone in the communications area for a period of time.  Cpl. Taylor had left the Station to assist on incidents that had occurred out on the road.  Upon her return, Cpl. Taylor had a conversation with PCO Kosh.  During that conversation, PCO Kosh stated that the Grievant had touched her on the shoulders twice when they were alone in the communications area.  PCO Kosh reported that the Grievant had apologized after the first time he touched her, but said nothing after the second time.

Cpl. Taylor telephoned the Station Commander, Lieutenant Harold Lacey and advised him about her conversation with PCO Kosh.  Cpl. Taylor then told PCO Kosh that the incident had been reported to Lt. Lacey and that she (PCO Kosh) should

2

document what had happened.  Cpl. Taylor also told PCO Kosh that she could file a formal complaint against the Grievant.

Cpl. Taylor next advised the Grievant that he was not to go into the communications area or have any further contact with PCO Kosh.  She further informed the Grievant that she had reported the incident to Lt. Lacey.  The Grievant offered an explanation to Cpl. Taylor, but was told that he should wait to speak to Lt. Lacey about the matter.

On April 13, 1998, Lt. Lacey met separately with PCO Kosh and the Grievant.    In their discussions with Lt. Lacey, PCO Kosh and the Grievant provided different accounts of what had happened when they were alone during the evening of April 9, 1998.  PCO Kosh was advised again of her right to file a complaint against the Grievant.  PCO Kosh elected to file a complaint.

As a result of the complaint, Corporal Gregory L. Johnson, Internal Affairs Division, conducted an investigation into the events of April 9, 1998.

On August 13, 1998, Captain Michael J. Marcantino, Commanding Officer, Troop L, issued a Disciplinary Action Report and concluded that the Grievant had placed his hands on the shoulders of PCO Kosh on two occasions and that said contact was neither necessary or welcome.  (Commonwealth Ex. 5).  The Grievant filed a written response to the Disciplinary Action Report on August 16, 1998.

The Department determined that the Grievant's actions in this matter constituted a violation of Field Regulations, Sections FR 1-1.02 (Unbecoming Conduct) and FR 1-2.02 (Performance of Duty) and notified the Grievant that he would be suspended for one day without pay.  The instant Grievance was filed.  The matter being

unresolved between the Department and the Pennsylvania State Troopers Association (PSTA), it proceeded to arbitration.

## Issue

Whether the Department had just cause to suspend the Grievant without pay for a period of one (1) day and, if not, what shall the remedy be?

## Position of the Parties

### Department

The Department asserts first that this matter involves an issue of credibility regarding the testimony of PCO Kosh and the Grievant regarding the incident that occurred on April 9, 1998. That issue, according to the Department, must be resolved in favor of PCO Kosh. The Department contends that the Grievant has a motive to be less than truthful regarding the events of the night in question. Specifically, the Grievant is attempting to negate the disciplinary action and the potential impact it might have on his opportunity for promotion. Additionally, the Department asserts that the Grievant's account of the incident has been inconsistent at times throughout the investigation and during his testimony at the hearing.

The Department argues that PCO Kosh, on the other hand, has repeatedly and consistently offered the same account of the incident. Moreover, according to the Department, PCO Kosh has no reason to fabricate the incident against the Grievant. At the time in question, PCO Kosh was a new employee occupying a civilian position with the PSP and the Grievant was a Trooper.

It is the Department's position that the Grievant's actions on the night of April 9, 1998 were inappropriate. Specifically, the Grievant placed his hands on the shoulders of PCO Kosh on two separate instances. This contact, according to the Department, was unsolicited and unwelcome. The Department asserts that this is the second time that the Grievant has engaged in similar inappropriate behavior. The Department argues that the investigation established that less than one year earlier, the Grievant was counseled and given a supervisor's notation for massaging the shoulders of another female PCO.

Finally, the Department denies that there was any conspiracy among any of the Department witnesses to entrap the Grievant. The Department specifically denies any allegation that the Grievant was disciplined because of Cpl. Taylor's bias towards him and points out that no evidence was provided to support that allegation.

Based upon the previous incident that gave rise to the supervisor's notation, the results of the investigation and the Grievant's response thereto, the Department contends that there is just cause for a suspension without pay for one day.

PSTA

PSTA argues that no discipline is warranted in this case and would not have been imposed but for the improper actions of the Department in utilizing a supervisor's notation as a stepping stone for progressive discipline. PSTA contends that it had no ability to challenge the supervisor's notation, that the notation itself does not constitute discipline and cannot be used as a basis for discipline in the current proceeding.

PSTA further argues that even if PCO Kosh's testimony that the Grievant touched her twice is accurate, that fact alone does not make the Grievant's testimony any less credible. Specifically, it is plausible that the Grievant tripped when he touched PCO Kosh the first time, for which he apologized, and that he inadvertently touched her a second time in the confined quarters without realizing it. PSTA contends that the Grievant and PCO Kosh were engaged in friendly conversation when the contact occurred. It is PSTA's contention that only after Cpl. Taylor inappropriately divulged confidential information about the Grievant's supervisor's notation to PCO Kosh, did PCO Kosh become concerned enough to file a complaint.

PSTA also argues that the Department did not fairly investigate this matter, but sought to entrap the Grievant. In making this argument, PSTA notes that during the investigation the Department deliberately failed to inform the Grievant that there were discrepancies in the two accounts of the incident on April 9, 1998 thereby denying him the opportunity to explain them.

Finally, PSTA asserts that the one-day suspension is not only undeserved but will unfairly serve to deprive the Grievant of a promotion for which he would otherwise be eligible. Accordingly, PSTA requests that he Grievance be sustained and that it be specifically ordered that the Grievant be eligible for promotional opportunities.

## Discussion

The sole issue presented is whether or not the Department had just cause to suspend the Grievant for one day without pay for inappropriate conduct when he was alone in the communications area with a civilian female employee, PCO Kosh. Both

Parties to some degree have referenced the impact of discipline on the Grievant's potential eligibility for a promotion[1]. The only relevance the Grievant's eligibility for a promotion has in this proceeding, however, is the inference that it was a factor in the level of discipline imposed in this case. Apart from considering whether or not the Department based its decision to suspend the Grievant, in whole or in part, in an attempt to prevent him from being promoted, the Grievant's eligibility for promotion is irrelevant. Accordingly, this decision will be rendered without consideration of the impact it might or might not have on the Grievant's eligibility for promotional opportunities in the future.

In reviewing the record in this case, it is apparent that PCO Kosh and the Grievant offer differing accounts of what happened when they were alone in the communications area on the evening of April 9, 1998. The Grievant testified that he did touch the shoulders of PCO Kosh when he tripped over a transition strip on the floor and lost his balance. PCO Kosh stated that the Grievant did not trip or fall prior to the contact. She further testified that the Grievant subsequently touched her shoulders a second time that night. The Grievant adamantly denies touching PCO Kosh a second time, asserting that if he did, it was inadvertent and he does not recall it.

It is undisputed that the Grievant touched PCO Kosh on the shoulders on at least one occasion when they were alone. The Grievant's testimony that a trip caused this contact is implausible. PCO Kosh testified credibly that the Grievant did not touch her with the force of someone falling and balancing himself against her shoulders. Nor did she hear a tripping sound immediately before or during the contact.

---

[1] PSTA has requested not only that the Grievance be sustained, but that the Arbitrator direct that the Grievant be eligible for promotional opportunities. The Department in its brief suggests that the Grievant's acrimonious testimony regarding his disdain for State Police Officers investigating "one of their own" for inappropriate behavior calls into question his potential ability to supervise others.

Moreover, the Grievant's immediate reaction to the incident was inconsistent with an accidental tripping. The Grievant testified, for example, that after he touched PCO Kosh his first thought was "they are going to screw me with this." To say the least, this is an unusual response to falling into a co-worker accidentally. Similarly, the Grievant apologized to PCO Kosh in a manner that did not reflect the fact that he had accidentally tripped or fallen. Both the Grievant and PCO Kosh testified that immediately after the contact, the Grievant said, "I'm sorry, I shouldn't have done that."

In any event, the Department indicated that had the incident ended at that point, it is likely that no discipline would have resulted. It was the occurrence of the second touch that resulted in the decision to discipline the Grievant.

PCO Kosh's testimony that the Grievant touched her shoulders two times on the evening of April 9, 1998 is credible. PCO Kosh has been consistent in this regard; she reported two separate touches to Cpl. Taylor that same evening, in the complaint she submitted, the interview she provided during the investigation and in her testimony at the hearing. PCO Kosh testified that she was surprised the second time that the Grievant touched her shoulders because he had made a big deal about the first time, apologizing in a manner she described as theatrical. PCO Kosh further testified that the Grievant said nothing after the second incident.

The Grievant adamantly denies being aware of touching PCO Kosh a second time. He contends that if this actually happened, it was unintentional and occurred without thinking. The Grievant stated that he frequently "talks with his hands" and it is possible that he touched PCO Kosh without realizing it. The Grievant further stated that if he had consciously touched PCO Kosh a second time he certainly would

8

have apologized. The Grievant added that he loved his family and needed his job and would have risked neither by deliberately touching PCO Kosh.

Despite the self-serving nature of this testimony, it is not inconsistent with PCO Kosh's immediate reaction to the incident. Although PCO Kosh was very uncomfortable and troubled by being touched by the Grievant, she believed that the first time he touched her, it was a mistake for which he apologized. With regard to the second incident, the investigative report filed by Cpl. Johnson detailing his interview with PCO Kosh includes the following statement: "When Trooper BROWN placed his fingertips on her shoulders the second time, PCO KOSH immediately thought he shouldn't have done it. PCO KOSH said she did not know why Trooper BROWN would have touched her the second time. She believes Trooper BROWN gets excited while talking and does this to emphasize his point." (Commonwealth Ex. 1, p. 3). PCO Kosh admitted at the hearing that this was still a possible explanation for the Grievant's actions.

PCO Kosh has never maintained that the Grievant's conduct was sexual in nature or that she felt threatened by him. In fact, the contact occurred during or about the time that they were engaged in cordial conversation about their families. Regardless of his motives, however, it is clear that the Grievant's physical contact with PCO Kosh was neither solicited nor welcome. PCO Kosh legitimately felt uncomfortable when the Grievant touched her.

At the time of the incident, the Grievant was a Trooper with the Pennsylvania State Police; the complainant a newly hired female civilian employee. At least by perception, PCO Kosh occupied a position of lesser status. They were working

alone in a confined area.  The Grievant had no legitimate reason to place his hands on

PCO Kosh's shoulders.  His conduct was inappropriate and is not excused because he is a

"touching" person by nature.  Moreover, the Grievant had reason to know and apparently

did know that he could get into trouble for touching a female PCO.  The Grievant had

received a supervisor's notation regarding a prior incident involving a female PCO, the

facts of which remain in dispute[2], which warned him that if he engaged in certain conduct

in the future he could be subjected to an investigation.  It is presumably because of this

warning that the Grievant apologized to PCO Kosh after touching her and worried that he

would be "screwed."

The Grievant's allegations that he is the victim of a conspiracy

spearheaded by Cpl. Taylor are unsubstantiated.  Clearly, there is no evidence to support

his inference that she deliberately placed him into a room alone with PCO Kosh in order

to set up a situation that could be used against him.  Moreover, the Grievant's anger at

others for investigating him and essentially turning on "one of their own" is misplaced.

The Grievant is responsible for his own actions.   If those actions are deemed

inappropriate, as in the instant case, he is properly subject to investigation and potential

discipline.

PSTA has questioned the integrity of the investigation in this case.  First,

it is asserted that the only reason that PCO Kosh filed a complaint against the Grievant is

because Cpl. Taylor divulged confidential information to her regarding the supervisor's

notation.  Although there was no apparent reason why Cpl. Taylor should have shared

this information with PCO Kosh, it seems certain that this information is not responsible

---

[2] The facts involved in the incident that gave rise to the supervisor's notation are not a part of the record in this case and no inference is made regarding them.

for PCO Kosh's decision to file a formal complaint. PCO Kosh was upset about the fact that the Grievant had touched her prior to receiving this information. She testified in a credible fashion that the decision to file the complaint was hers alone and was not influenced by anything said by Cpl. Taylor.

PSTA also contends that the Department attempted to entrap the Grievant by failing to provide him with all of the information in the complaint. In support of this contention, PSTA refers to a statement in the General Investigation Report that indicates that Lt. Lacey did not tell the Grievant about the discrepancy between his and PCO Kosh's account of what happened (that there were two occasions of touching) in order to prevent the Grievant from preparing a new defense. (Commonwealth Ex. 1, p. 10). Fundamental fairness requires that the accused be provided with all of the allegations made against him in order to respond to those charges. Therefore, PSTA raises legitimate concerns regarding this initial questioning of the Grievant. However, the record also reflects that the Grievant was informed of the discrepancies prior to his pre-disciplinary meeting with Captain Marcantino and given an opportunity to respond thereto in a timely fashion. (Commonwealth Ex. 6).

In sum, I find that the Grievant engaged in inappropriate conduct when he touched the shoulders of PCO Kosh on the evening of April 9, 1998. On the basis of the record presented, however, I do not conclude that the Department had just cause to suspend the Grievant for this infraction. According to the Department, its decision to suspend rather than issue a written reprimand to the Grievant was based essentially on

two factors: the prior incident giving rise to the supervisor's notation and the fact that the Grievant touched PCO Kosh twice, not once[3].

The Grievant, however, has no discipline in his record for similar inappropriate conduct. The Department acknowledges that the supervisor's notation is not discipline. The facts giving rise to the supervisor's notation are still in dispute between the Parties. Unlike this case, the incident underlying the supervisor's notation was not the subject of a formal complaint and investigation and no disciplinary action was taken.

Without prior discipline, the circumstances under which the Grievant touched PCO Kosh in this case are important. As indicated above, both the Grievant and PCO Kosh have described him as an excitable person who in essence "talks with his hands." Although his conduct was inappropriate, there is insufficient evidence to establish that the Grievant intentionally sought to intimidate, harass or make sexual advances towards PCO Kosh. Under these circumstances, there is no justification for the Department's failure to utilize progressive discipline in this case. Accordingly, I find that the Department had just cause to issue a written reprimand to the Grievant for his inappropriate conduct.

Mitigating the discipline in this case is not intended to absolve the Grievant of the need to accept responsibility for his own actions in the future nor diminish the fact that the Department is properly concerned with the treatment of its female employees.

---

[3] There is no evidence to support a finding that the Department considered the Grievant's eligibility for promotion when it decided to suspend him.

### AWARD

The Grievant's One-Day Suspension is reduced to a Written Reprimand.

Dated: *April 26, 1999*

Harrisburg, Pennsylvania

Lynne M. Mountz
Impartial Arbitrator

97-155

10248

3-336 (1-93)

PENNSYLVANIA STATE POLICE
DISCIPLINARY ACTION REPORT

| NAME | RANK | SSN | DOE | TROOP/STATION |
|---|---|---|---|---|
| cott A. BROWN | Tpr. | 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 2878 | 11/21/91 | L-Jonestown |

INFRACTIONS (LIST INFRACTION (S), DATE (S) OF OCCURRENCE AND DETAILS)

On August 2, 1997, you conducted a bicycle theft investigation, L2-561990. The investigation involved a Juvenile, Brian PLASTERER. You located Brian PLASTERER and interacted with his family. In this contact, you used foul language, yelled, threatened and lost composure while interacting with these people.

2.13, COURTESY

1.02, UNBECOMING CONDUCT

Capt Michael J Marust 12/10/97

SIGNATURE (INITIATING OFFICER)                          DATE

MEMBER'S NOTICE    IN ACCORDANCE WITH THE PROVISIONS OF THE PSTA CONTRACT, I HAVE BEEN GIVEN NOTICE OF MY RIGHTS AS SET FORTH IN FR 3-3, AND HAVE BEEN AFFORDED THE OPTION OF REPRESENTATION AT THE PRESENTATION OF THIS REPORT.

I ACKNOWLEDGE RECEIPT OF THIS REPORT

TPR. [signature]    TROOPER    12/10/97
SIGNATURE                        RANK        DATE

**PLAINTIFF'S EXHIBIT 3**

ACTION

**GRIEVED. Pre-Arb Agreement: In lieu of serving adjudicated 1-SWOP will have one day deducted from Annual Leave Balance.**

Larry Williams
SIGNATURE (DISCIPLINARY OFFICER)    RANK        DATE
LARRY WILLIAMS    CAPTAIN    04/15/98

STD-501x, 9-86                                          COMMONWEALTH OF PENNSYLVANIA

**DATE:**          December 15, 1997

**SUBJECT:**       BPR# 10248/DAR

**TO:**            Captain Larry Williams
                   Department Discipline Office
                   Executive and Administrative Offices

**FROM:**          Trooper Scott A. Brown
                   Patrol Unit
                   Troop L, Jonestown

**ENCLOSURE:**     (1) Daily Duty Roster, Jonestown Station, 07/31/97.
                   (2) Daily Duty Roster, Jonestown Station, 08/01/97.
                   (3) Norlanco Medical Center Prognosis Diagnosis for Scott
                       Brown dated 08/01/97.

1. This correspondence is prepared to offer this officer's interpretation and explanation of the above incident which resulted in the issuance of a Disciplinary Action Report by Captain Michael J. Marcantino, Troop L, Reading under the above BPR Control Number.

2. In the first instance, this officer feels that the allegations presented by the Complainant are highly exaggerated and embellished.

3. I would like you to note that the language used by myself was intended to be descriptive as to a grouping of individuals rather than insulting to the individual involved.

4. At the time, this officer was attempting to present a corrective lecture to the juvenile regarding decisions and their further repercussions.



PLAINTIFF'S
EXHIBIT

4

STD-501x, 9-86                                COMMONWEALTH OF PENNSYLVANIA

5.  Attachments numbered 1 and 2 reflect that this officer was utilizing sick leave on the immediate days prior to the incident. Attachment number 3 reflects that this officer was being treated for strep throat by a licensed physician during the time period of this incident. Attachment number 3 also reflects a continuing diagnosis/prognosis for depression/stress requiring medication.

6.  This officer noted the day in question (8/2/97), according to the National Weather Service, was a hot and humid day with an 85 degree temperature with 65 percent humidity.

7.  This officer respectfully requests that with the above presented information you note that I was attempting to provide a positive influence on this juvenile by providing corrective dialogue while diverting him from the Juvenile Justice System.  I would also like you to note that during this time period, this officer suffered from medical problems possibly affecting this officer's duty performance and thereby providing mitigating factors.

ATTACHMENT (11)

## SUMMARY REPORT

BPR:                    9534
DATE:                   April 30, 1997
ISSUING OFFICER:        Lieutenant Francis H. GROLEMUND, Jr. *FHG*
TROOP:                  Troop S, Milesburg

SUBJECT:                Trooper Scott A. BROWN
                        Troop S, Harrisburg Station
                        Date of Enlistment: 11/12/91
                        Social Security Number: 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

## REASON FOR INVESTIGATION

A Use of Force or Complaint Reception and Processing Worksheet was initiated as a result of a non-complaint Use of Force incident in which you were involved on April 10, 1996, at approximately 1645 hours, in Lemoyne Boro, Cumberland County.

The investigative findings revealed that the incident started while you were operating your personal vehicle, accompanied by your wife and child. Your vehicle was struck in the rear by another vehicle operated by Rodelio GARCIA, 5129 Haverford Road, Harrisburg, PA 17109. The findings also revealed that no one was injured as a result of this accident. You initially exited your vehicle and had a short discussion with the other operator, Rodelio GARCIA. You identified yourself as a Pennsylvania State Police Trooper and asked for the required information. GARCIA subsequently left the scene without providing the necessary information that is required by law. Off-duty and in your personal car, you pursued the subject, GARCIA.

You encountered GARCIA a short distance from the initial accident scene. You approached GARCIA and ordered him to shut off his vehicle, identifying yourself as a Pennsylvania State Police Trooper. You did not advise GARCIA that he was under arrest. GARCIA ignored your order and attempted to leave the scene. You then drew your service pistol and pointed it at GARCIA. When he continued to try to leave the scene, you entered his vehicle through the open sunroof area. You engaged in a physical altercation with GARCIA while he was traveling on the highway. During this altercation, you admittedly struck GARCIA at least twice with your service pistol. At no time during this encounter, according to your statement or the statement of GARCIA, did you ever advise him that he was under arrest.

GARCIA advised that you struck him several times without justification. GARCIA also advised in a statement to the local police that you were yelling, "Get the fuck out of the car!" GARCIA's statement is partially corroborated by an eye witness, Mr. Charles Fortney, as he said you were yelling at the top of your lungs, "Open the fucking door!" Information was provided by another eye witness to this incident, Mr. Roger E. Sentiwany, as he said you were "roughing up GARCIA pretty good" and pointing you service pistol at GARCIA's head at the conclusion of this incident.

I call your attention to FR 1-1.02, Unbecoming Conduct, FR 1-1.30, Use of Firearms, FR 1-2.13, Courtesy, FR 1-2.21, Police Action/Off-duty, and FR 7-3, Use of Deadly

PLAINTIFF'S EXHIBIT 5

Summary Report BPR-9534
April 30, 1997
Page 2

Force, in its entirety. Please review the aforementioned Directives as I feel they are germane to your conduct in this matter. To say that I am disappointed in the manner in which you handled this incident would be an understatement.

Your use of firearms in this police action off-duty was entirely inappropriate. You escalated a minor traffic accident into a serious police incident by your use of your service pistol. At no time, according to the findings, did you advise GARCIA that he was under arrest. His illegal behavior, by not stopping at the scene of a minor traffic accident, does not justify your pulling your service pistol and waving it around, and possibly endangering not only yourself and GARCIA, but others of the motoring public. Your jumping through the sunroof of GARCIA's vehicle and "pistol whipping him" was entirely inappropriate. Your actions caused a second traffic accident, endangering additional motorists.

You failed to pursue reasonable avenues of investigation that were open to you. You could have easily followed GARCIA's vehicle, obtained the registration number, and reported that information to the appropriate authorities. You personally observed GARCIA and could have identified him at a later time. Your explanation concerning why you drew your service pistol is unconvincing. At most, GARCIA was guilty of Hit and Run of attended vehicle, without injury, a misdemeanor of the third degree. That did not rise to the level of a serious police matter, that required you to take necessary action pursuant to FR 1-2.21. Finally, your use of obscene language during this incident, witnessed by the motoring public, was inappropriate and unacceptable..

The District Attorney of Cumberland County has declined to prosecute you criminally for your actions in this matter. However, that does not excuse you from the administrative rules and regulations required by the Pennsylvania State Police.

This Summary Report and attachments are being provided to inform you that I am considering the issuance of a Disciplinary Action Report (DAR), with regard to your conduct in this matter. If you desire to meet with me to discuss any justification or information being considered for use in the issuance of said DAR prior to my final determination, you may request a meeting by contacting me or Sergeant William A. Horgas, Acting Staff Services Section Commander, within three days of your receipt of this summary.

RECEIVED BY _____ DATE 5/6/97 TIME 1450

WITNESS _____ DATE 5/6/97 TIME 1450

SP 7 - 0029 (10 - 83)

| | 1. INCIDENT NO. | 2. DATE OF REPORT |
|---|---|---|
| | BPR-9534 | 05/09/97 |

PENNSYLVANIA STATE POLICE

## GENERAL INVESTIGATION REPORT

3. INVESTIGATING OFFICER

Lieutenant Francis H. GROLEMUND, Jr.

4. TROOP - STATION

Troop "S", Milesburg

SUBJECT (NATURE OF INVESTIGATION OR NAME AND ADDRESS OF INDIVIDUAL)

Trooper Scott A. BROWN
Troop "S", Harrisburg Station
Date of Enlistment: 11/12/91
Social Security Number: 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

INSTRUCTIONS: REPORT WILL BE PREPARED IN THE FOLLOWING ORDER:   REASON FOR INVESTIGATION, SYNOPSIS OF INVESTIGATION, CONCLUSION, RECOMMENDATIONS AND COMMENT (WHEN APPROPRIATE), LIST OF ATTACHMENTS (IF ANY) AND DETAILS WHICH SUPPORT THE SYNOPSIS.

### LIST OF ATTACHMENTS:

(11)    Summary Report, BPR-9534, signed by Trooper Scott A. BROWN on May 6, 1997, at 1450 hours and witnessed by Sergeant Barry E. STAUB, Acting Southeast Section Commander.

(12)    Correspondence dated May 8, 1997, to the Acting Commanding Officer, Troop S, Milesburg, from Trooper Scott A. BROWN.

### DETAILS:

On May 8, 1997, at 1530 hours, I met with BROWN at the Harrisburg Station.  As a result of the pre-disciplinary conference, BROWN did not provide me with any new information that would change my mind relative the issuance of a Disciplinary Action Report.  BROWN did provide written correspondence further explaining his actions.  Refer to Attachment (12).

After reviewing Attachment (12) submitted to me by BROWN, I requestioned him relative his use of obscenities during the incident with GARCIA.  He was questioned concerning a statement on Page 1 of Attachment (12) in which he allegedly indicated to GARCIA, "Your under arrest mother fucker.  Shut the car off now."  That statement contradicts information BROWN gave the investigator which is included on pages 11 and 12 of the investigative report.  BROWN had indicated to the investigator that at first he could not remember if he had used any obscenities during the incident.  BROWN clarified his statement on Page 12 of the investigative report in which he indicated, after speaking with his wife, he was positive that only basic commands were used during the incident, and that he used no foul language toward GARCIA.   BROWN then admitted to me that his initial statements to investigators, relative the use of foul language, was untruthful and a lie.  BROWN stated he lied to avoid getting into trouble.

The inconsistent statements made by BROWN during this investigation, and his admission of a deliberate and intentional lie to the investigating officer, casts doubt on BROWN's credibility on all relevant parts of this investigation in which he is contradicted by evidence or other testimony.

Following the pre-disciplinary conference, BROWN was issued a Disciplinary Action Report (DAR) by me.  A copy of the DAR and the investigative report were forwarded to the Department Disciplinary Officer.  No further action at this time.



7. SIGNATURE                                       BADGE NO.

296

9.  ☐ ORIGINAL
    ☒ SUPPLEMENTAL

COMMONWEALTH O        ATTACHMENT (12)

DATE           May 8, 1997

SUBJECT.       Predisciplinary Hearing/conference

TO:            LT. GROLEMUND
               Troop S. Commanding Officer

FROM:          Tpr. S BROWN   6440
               Patrol member Harrisburg

1.    This officer respectfully requests you consider the following two pages in your decision of discipline.



SP 3-346 (7-88)



## COMMONWEALTH OF PENNSYLVAN.
## PENNSYLVANIA STATE POLICE

This officer respectfully requests the following be considered in the issuance of the DAR.

In this situation as in most hind sight is always 20/20. I realize in the past my decision making has been less than stellar. At the time of the incident I believed I made the right decision. If I had it to do all over again who knows what decision I would make but in the past year this incident has been replayed in my head thousands of times. At the time of this incident my family was dealing with a crisis in which it was. discovered my daughter is disabled and as a new father with another child on the way I was not dealing with the situation well and in fact was very angry at GOD and myself and dealing with the "who's fault it is my daughter has the problems she has." In the incident itself my vehicle was damaged and I identified my self and only wanted to exchange information so our insurance companies could battle it out. Mr. GARCIA is the one who escalated the incident by taking off and almost hitting me. In my mind he not only committed the misdemeanor hit & run but now recklessly endangering. As I followed Mr. GARCIA's vehicle my intent was to only get the registration and advise ←
the local authorities as I did not want a confrontation with my family present. when I observed the registration it was expired and only secured by one screw on the vehicle. The vehicle was lowered and had so many equipment violations it was obvious to me the tag did not belong to the vehicle and was a dead tag. Therefore any attempt to investigate the subject and vehicle would have met an abrupt end and now as a victim the local police would not have been able to arrest Mr. GARCIA and link him to this crime. (The registration was confirmed a dead tag and my observations substantiated by the local police.) As we were now stuck in traffic I approached Mr. GARCIA with the intent of holding him there for the local police so they could take appropriate action against Mr. GARCIA, not to escalate the situation. After I showed him the badge again and Identified myself as a police officer this is when Mr. GARCIA told me "FUCK YOU" and turned away. In my mind and experience I thought he was reaching for a weapon next to his seat. At this point it was obvious Mr. GARCIA would have to be taken into custody if he was to be prosecuted. Again I yelled "state Police shut the car off." and pulled my weapon to protect myself as I could not see what he was doing with his hands. when he turned around I stated " Your under arrest mother fucker shut the car off now". I did not put this statement in my previous statements as it would of admitted violating the FR by the use of my profane language. I do not condone my choice of words but I did place him verbally under arrest. Mr. GARCIA escalated the situation by pulling away. I feared in this heavy traffic he would hurt others in his attempt to flee arrest. I made the decision to go through the sunroof to affect the arrest. I regret this decision in hind sight and personally feel I should of given up as I caused my wife mental trauma that we are still dealing with as of to date.

*Buckle Up Pennsylvania*



SP 3-346-7-80

COMMONWEALTH OF PENNSYLVANIA
PENNSYLVANIA STATE POLICE

Mr. GARCIA caused the second accident as he drove into the other vehicle and at the time I was balancing through the sunroof. After the second accident and we were stopped he was trying to get away and that is when I grabbed the keys out of the ignition. As I had no holster and was upside down in a bad position I could not put my weapon away. Mr.GARCIA was going for my gun and I was trying to retain it. I only struck him with me free hand/weapon hand so he would let go of me and I could secure my weapon. At no time was my weapon pointed at anyone but Mr. GARCIA or the ground. My finger was at no time during his incident in the trigger guard. Again in hind sight I regret pulling my weapon but only for the fact I had no were to secure it after I took it out. I did not "Rough Up Mr. GARCIA. I guided him to the ground and had my knee in his low back so he couldn't get up as he was struggling. My weapon was pointed at center mass. I do not know at what angle the witness saw me but at no time was my weapon pointed at Mr. GARCIA's head. During this incident I did not know my family was unhurt. I found out afterwards. I wish to advise that Mr. GARCIA was arrested for five outstanding warrant for the same violations at the preliminary hearing and in fact has committed these offenses three separate times.

I take full responsibility for my actions in this matter, I do know some of my decisions were avoidable. However I utilized the use of force continuum that was available to me at the time. I DID NOT ESCALATE THIS SITUATION MR. GARCIA ESCALATED THIS INCIDENT. This incident to me was a serious police incident. I love my family more than anything and will protect them no matter what and they are the most important aspect of my life. I can guarantee I will not repeat my actions in this situation, as in hind sight it wasn't worth it to subject my family to witness my taking police action. As a man I have grown and changed in the past year. I am not the same man as I was a year ago. I have taken proactive steps to correct my short-comings. I am currently prescribed medicine for attention deficit hyperactivity disorder, I am seeing the department psychologist Larry WALKER and have come to terms with my family situation. At the time I thought I was making the right decisions but in hind sight it comes down to a 500 dollar deductable. It just wasn't worth it.

PSP-501X

COMMONWEALTH OF PENNSYLVANIA
PENNSYLVANIA STATE POLICE

DATE:          September 10, 2002

SUBJECT:      **CONFIDENTIAL**
              Notification of Dismissal
              Corporal Scott A. Brown

TO:           Captain Coleman J. McDonough
              Commanding Officer
              Troop F, Montoursville

FROM:         Captain Robert B. Titler
              Disciplinary Officer

1.      Upon the recommendation of the Disciplinary Officer, with the concurrence of the Deputy Commissioner of Administration, and by the authority of the Commissioner, Corporal Scott A. Brown shall be dismissed from the Pennsylvania State Police. Pending the deadline for filing a timely grievance and, if applicable, a subsequent decision by an arbitrator, Corporal Brown shall be placed in a suspension without pay status due to the fact the Commissioner has determined the penalty to be dismissal. There is sufficient evidence to support the following facts and conclusions.

   a. On April 3, 2002, Corporal Brown was on duty, attending a training session with other Department members at Troop F, Selinsgrove. At about 8:30 AM, videotape including Ms. Barbara M. Christie, PSP Chief Counsel, was shown as a part of the training. When Ms. Christie's image appeared on the screen Corporal Brown launched into a tirade of obscenities directed toward her. Brown's outburst included loud references to Christie as a "cunt", "bitch", "idiot" and "fucking asshole." Members present also reported hearing Corporal Brown criticize Ms. Christie, saying she was incompetent, hated the men, hated the members, and was no good.

   b. Present during Corporal Brown's outburst were Corporal Samuel L. Patterson, the course instructor; Corporal Todd A. Brian; Trooper Leon Brown; and Trooper Kevin D. Kearney.



c. Sergeant Marshall A. Martin, Selinsgrove Station Commander, was working in the station supervisor's office adjacent to the room where the training was being conducted. Sergeant Martin reportedly heard what he believed to be Corporal Brown's voice loudly using the aforementioned obscenities and criticisms. Sergeant Martin and Corporal Patterson advised Corporal Brown that his comments were inappropriate and told him to stop making them. Only then did Corporal Brown cease his tirade.

d. Brown provided the administrative investigator of this incident with correspondence indicating the following:

> "On the date in question; Yes I did attend training at PSP Selinsgrove with other Corporals. We were watching a video and the image of Attorney B. CHRISTIE; PSP Chief Council came on the screen. I voiced my opinion of her relating I felt she was a cunt and a fucking asshole due to the stress and aggravation her decisions had caused me. I was then told I said a little loud and apologized. I was in the presence of peers,cpl.s, in the patrol room."

This statement was taken verbatim from correspondence prepared by Corporal Brown. Any misspellings or emphasis made are those of Corporal Brown. It should be noted that while Corporal Brown seems to infer that his outburst took place in the presence of other corporals it was, in fact, made in the presence of members of subordinate rank as well as members of equivalent rank.

e. Ms. Christie was interviewed during the administrative investigation of Corporal Brown's conduct. She advised that the only issue relating to Corporal Brown that she has had the occasion to deal with as a part of her duties as PSP Chief Counsel is when she made a determination concerning his indemnification for his conduct during an off-duty incident.

f. Prior to the incident that resulted in this discipline Corporal Brown received numerous warnings and was counseled concerning his use of profanity by a number of superior officers, including the Commanding Officer of Troop F, Montoursville.

    g.  The misconduct described here, in conjunction with his disciplinary record, is viewed as a demonstration of Brown's loss of competency to remain in the position of Pennsylvania State Police member.

2.    Corporal Brown's conduct and behavior in this matter is in violation of the following State Police Field Regulations:

> FR 1-2.02, Performance of Duty
> FR 1-2.12, Courtesy
> FR 1-1.02, Unbecoming Conduct
> FR 1-2.05, Competency

3.    **Corporal Brown may appeal this disciplinary action by submitting a grievance, in writing, directly to the Bureau of Labor Relations, Office of Administration, Room 404, Finance Building, Harrisburg, PA 17120, within 15 calendar days of receipt of this letter.** Apprise Corporal Brown accordingly and furnish him with a copy of this memorandum. Additionally, after serving this correspondence please FAX the signed "acknowledgement of receipt" copy, **immediately** to the Disciplinary Office, ATTENTION: Disciplinary Officer at 772-0381. Please telephone at 783-5531, Dee Webster, immediately prior to sending the FAX copy in order to **maintain confidentiality**.

cc:    Commander, Area II

CERTIFICATE OF CONCURRENCE/NON-CONCURRENCE

I hereby certify that on January 15, 2003 I contacted or attempted to contact opposing counsel Gregory Neuhauser, Esquire, and sought concurrence in the attached motion.

[] Concurrence was granted.

[x] Concurrence was not granted.

[] Concurrence or non-concurrence could not be obtained because opposing counsel was unavailable. Additional attempts will be made to obtain concurrence of non-concurrence and a further certificate filed with the court as soon as possible. Opposing counsel is requested to call the undersigned upon receipt of this motion to advise of his/her position regarding concurrence or non-concurrence in the attached motion.

RESPECTFULLY SUBMITTED,

SERRATELLI, SCHIFFMAN, BROWN AND CALHOON, P.C.

By: _____
SPERO T. LAPPAS, Esquire
Pa. Supreme Ct. ID no. 25745
2080 Linglestown Road
Suite 201
Harrisburg, PA  17110-9670
(717) 540-9170
ATTORNEYS FOR THE PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on this date I served a true copy of the attached document upon the person(s) named below by mailing a copy addressed as follows, postage pre-paid, deposited into the U. S. Mail at  Harrisburg, Pennsylvania, or by hand delivery to

Gregory R. Neuhauser, Esquire
Office of Attorney General
15th Floor, Strawberry Square
Harrisburg, PA  17120

*RESPECTFULLY SUBMITTED,*

*SERRATELLI, SCHIFFMAN, BROWN AND CALHOON, P.C.*

*By:* _____
*SPERO T. LAPPAS, Esquire*
*Pa. Supreme Ct. ID no. 25745*
*2080 Linglestown Road*
*Suite 201*
*Harrisburg, PA  17110-9670*
*(717) 540-9170*
*ATTORNEYS FOR THE PLAINTIFF*

January 17, 2003

---

*SERRATELLI, SCHIFFMAN BROWN AND CALHOON, P.C.*
*By:  SPERO T. LAPPAS, Esquire*