SERRATELLI, SCHIFFMAN, BROWN AND CALHOON, P.C.
2080 Linglestown Road
Suite 201
Harrisburg, Pennsylvania   17110-9670
Telephone (717) 540-9170
Fax (717) 540-5481
By:  SPERO T. LAPPAS, Esquire
     Pa. Supreme Court ID no. 25745
     slappas@ssbc-law.com

FILED
HARRISBURG, PA

JAN 2 2 2003

MARY E. D'ANDREA, CLERK
Per _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| RANDY YORDY, | : | NO.: 1:01-CV-0206 |
| Plaintiff | : | |
| | : | CIVIL ACTION LAW |
| v. | : | |
| | : | JUDGE KANE |
| SCOTT BROWN, PAUL EVANKO, | : | |
| BERON STEAGER, AND BARRY L. | : | |
| BRINSER, et. al., | : | |
| Defendants | : | JURY TRIAL DEMANDED |

PLAINTIFF'S SUPPLEMENTAL MOTION FOR A NEW TRIAL

AND NOW, January 22, 2003 comes the Plaintiff Randy Yordy, by and through his attorney SPERO T. LAPPAS, Esquire, and supplements and amends his previous motion for a new trial, re-asserting and renewing all grounds for relief presented in that motion, respectfully representing as follows:

SERRATELLI, SCHIFFMAN BROWN AND CALHOON, P.C.
By:  SPERO T. LAPPAS, Esquire

Page 1

1. During the course of the trial, when Plaintiff's Counsel sought leave to prove that Scott brown was no longer entitled to represent himself, or to be identified, as a member of the Pennsylvania State Police, Defense Counsel asserted (during an in-chambers conference) that as long as Scott Brown's firing was not final, and during the period when he was on suspension without pay status, he was still entitled to be addressed as a member of the Pennsylvania State Police.  Defense Counsel attributed this information to his client.

2. The Honorable Trial Court denied the Plaintiff's request that defendant Brown's current employment status be described to the jury in light of the fact that defense counsel was suggesting to the jury that the defendant was a member in good standing of the Pennsylvania State Police by addressing him as "Trooper."

3. Defense counsel improperly addressed the defendant as "Trooper" while defendant Brown was, as of the time of trial, either terminated from the state police or on suspension without pay, and thus it was not appropriate for him to be addressed as Trooper, or to acknowledge that form of address.

4. The Pennsylvania State Police Field Regulations, specifically FR 3-3 (effective 3/3/99) clearly speak to this issue and require unambiguously that while on suspension without pay (Brown's status during trial) members are not to "represent themselves as a Pennsylvania State Police Officer in any manner."

A copy of FR 3-3 is attached hereto as Exhibit A. The operative provision appears at page 11, paragraph 4.a.

5. Accordingly, the information which the defense gave the court during this trial is flatly and unequivocally false.

6. This was a serious trial issue. Not only did the defense falsely present Scott Brown -- a disgraced subject of imminent separation from service under disreputable circumstances -- as a member in good standing, entitled to all of the honor and respect which the public (including our jurors) could reasonably be expected to feel for police officers, but it allowed the Defense to abuse the protection of the court's order in limine (regarding post-February 4, 1999 discipline).

7. Furthermore, perhaps because of the Defense assurance that such a form of address was proper under the circumstances, at the conclusion of defendant Brown's testimony, and perhaps at other times as well, the Court addressed defendant Brown as "Trooper."

8. The Plaintiff believes and avers that Scott Brown had likely been made aware of the force and effect of FR 3-3, and that he knew (or at least should have known) that he was not to call himself or allow others to address him as if he were "a Pennsylvania State Police Officer in any manner." (Exhibit A, page 11, section 4.a.)

9. The other individual defendants, Steager and Brinser, should also have known that this reference to Brown as "Trooper"

was specifically forbidden.

10. Certainly, Paul Evanko, the Commissioner of the State Police and another Defendant in this case represented by the same counsel as Brown, could be expected to have known of this regulation.

11. Accordingly, the effect of FR 3-3 amounts to after discovered and new evidence which contradicts representations made to the court by the defense during trial.

12. Furthermore, it establishes that the defense improperly and unfairly influenced the trial and the jury's deliberative process by falsely indicating that Scott Brown was a trooper. See, e.g., Wharf v. Burlington Northern R. Co., 60 F.3d 631 (9th Cir. 1995).

13. The Plaintiff requests that the court conduuct a hearing on this question as authorized by F.R.C.P. 59.

14. Plaintiff re-asserts and renews all grounds for relief presented in his original Motion for a New Trial.

15. WHEREFORE, the Plaintiff requests that the court order a new trial against the Defendants in his case.

RESPECTFULLY SUBMITTED,

SERRATELLI, SCHIFFMAN, BROWN AND CALHOON, P.C.

By: _____
SPERO T. LAPPAS, Esquire
Pa. Supreme Ct. ID no. 25745
2080 Linglestown Road
Suite 201
Harrisburg, PA  17110-9670
(717) 540-9170
ATTORNEYS FOR THE PLAINTIFF

January 22, 2003

SP 3-200 (12-93)

FR 3-3
3/3/99





**PENNSYLVANIA STATE POLICE**
DEPARTMENT DIRECTIVE

SUBJECT: DISCIPLINE

3.01    POLICY

    A.   <u>Standard of Behavior</u>: As clearly stated in the Pennsylvania State Police Call of Honor, the mission of the Pennsylvania State Police to enforce the law holds a member to a higher standard of behavior than is required of the general population.

    B.   <u>Expectations of Conduct and Performance</u>: The Governor's Code of Conduct, the Pennsylvania State Police Oath of Enlistment, Call of Honor, and Field Regulations set forth, to the extent possible, the Department's expectations of conduct and performance.

    C.   <u>Chain of Command</u>:  The Department's system for holding members strictly accountable for their individual behavior is intended to be corrective in nature and fair.  The chain of command is charged with the duty to ensure that supervisory or corrective counselling and/or training will be the initial response to performance behavior inadequacies of a minor nature.

    D.   <u>Evaluations</u>: The chain of command and the Pennsylvania State Troopers Association recognize that a fair, equitable, and timely system must exist in order to impose discipline for performance and conduct indiscretions. When misconduct occurs, discipline shall be dealt with in a manner consistent with this regulation. Both aggravating and mitigating factors shall be evaluated prior to the imposition of any discipline. However, there is certain misconduct which, by its very nature, is not subject to the consideration of mitigating factors.

FR 3-3
3/3/99

      E.    <u>Interference</u>: In order to ensure fairness and impartiality of the disciplinary system, no member shall interfere with the process as established by this regulation nor shall they exert or attempt to exert any influence on any participants in the disciplinary process except as permitted by the provisions of this regulation and existing collective bargaining agreements.

3.02    DEFINITIONS

      For the purpose of this regulation, the listed terms shall have the following meanings:

      A.    <u>Aggravating Factor</u>: **Circumstances which actively** make the infraction worse, more serious, or more severe.

      B.    **<u>Cadets</u>: All members below the rank of Trooper shall be classified as Cadets.**

      C.    <u>Court-martial Offense</u>: Any offense which, if founded, the member is subject to disciplinary action up to and including, but not limited to, dismissal, transfer, reduction in rank, and/or suspension without pay in excess of 30 days.

      D.    <u>Mitigating Factor</u>: **Circumstances which actively** make the infraction less severe or painful; to cause to become less harsh or hostile.

      E.    **<u>Probationary Troopers</u>: Members above the rank of Cadet who have not completed their legal probationary period shall be classified as probationary Troopers.**

3.03    APPLICABILITY

      The provisions of this regulation apply to all members with the following exceptions:

      A.    <u>Cadets</u>: Cadets are not governed by the procedures of this regulation.

            1.    Cadets shall be subject to all other Department rules and regulations, including **Academy rules and regulations for Cadet conduct,** as prescribed by the Director, Bureau

-2-

FR 3-3
3/3/99

        of Training and Education, and approved by the Commissioner.

    2.    A Cadet may be dismissed from the Department by the Deputy Commissioner of Administration as authorized by the Commissioner, upon recommendation of the Director, Bureau of Training and Education, for violations of any **Department or Academy** rules and regulations, or for failure to meet the physical, academic, or attitudinal standards set for Cadets.

  B.    <u>Probationary Troopers</u>: A probationary Trooper shall be given all the rights contained in this regulation, except that they may be dismissed, at the discretion of the Commissioner, for proper cause.

## 3.04 AUTHORITY

The Commissioner has the ultimate responsibility for the conduct and discipline of members and therefore has the authority to discipline members pursuant to the provisions of this regulation.

## 3.05 RESPONSIBILITY

  A.    <u>General</u>: Members accused of actions that are contrary to statutory requirements or Department rules and regulations pertaining to conduct or performance shall be treated justly, fairly, and timely. Allegations of violations must be documented or otherwise capable of being shown to have been based on reasonable belief. Investigations of such allegations shall be conducted in strict accordance with existing policy governing internal investigations and contractual obligations. Subject to the exercise of legal rights, members shall cooperate in all investigations of their conduct and answer all questions pertaining to their position as a Pennsylvania State Police Officer, completely, truthfully, and to the best of their ability. Disciplinary action based on arbitrariness, supposition, unfounded or unsubstantiated complaints, personal bias, or prejudice shall not be imposed. Commanders and Directors shall exercise their responsibility in processing disciplinary action cases promptly and unhesitatingly without favor or prejudice.

-3-

FR 3-3
3/3/99

    B.    <u>Commanders, Directors, and Supervisors</u>: Commanders, Directors, and supervisors are responsible for the conduct and performance of members of their immediate command. They are charged with the responsibility and authority to initiate investigations relating to allegations of violations of statutes, rules, and regulations which are committed by members of their command. Commanders and Directors are responsible and expected to take appropriate disciplinary action in accordance with existing policy.

        1.    Supervisors are expected to closely monitor and actively supervise the conduct and performance of subordinates. Supervisors are accountable for the proper processing of complaints involving alleged violations of statutes, as well as violations of conduct or performance, regardless of how they are brought to the supervisor's attention.

        2.    Commanders and Directors shall not discipline or attempt to discipline a member not of their command. This does not prevent supervisors or Commanders and Directors from taking immediate corrective action for improper conduct or performance. Any such misconduct or impropriety should thereafter be reported as soon as practicable, directly to the individual's Commanding Officer or Bureau Director along with the appropriate or necessary correspondence.

3.06    DISCIPLINARY OFFICER

    A.    <u>Authority</u>: The Commissioner shall appoint a Commissioned Officer to perform the functions of Disciplinary Officer. The Disciplinary Officer has the authority to take any necessary action consistent with the purpose of this regulation.

    B.    <u>Duties</u>: The primary duties of the Disciplinary Officer shall be to:

        1.    Coordinate, evaluate, and process all Disciplinary Action Reports (DARs) submitted. Evaluation, as used in this context, shall include the careful examination of all applicable reports to ensure that reasonably adequate facts are contained therein which substantiate and justify any intended disciplinary action.

-4-

FR 3-3
3/3/99

2. Prior to the imposition of any discipline, review the following documentation in order to determine the appropriate and consistent level of discipline:

   a. Consideration of the member's written response to the DAR, when such response has been submitted, along with any aggravating or mitigating factors.

   b. Review the member's official personnel folder for prior disciplinary actions and any other aggravating or mitigating information which may be deemed to have merit in imposing the appropriate level of discipline.

   c. Review the member's past discipline history, if any.

   d. Review DAR files of previous cases of violations for similar or like circumstances for the purpose of maintaining consistency in discipline. It must be understood that it is unlikely that any two cases will ever be exactly alike. Consistency therefore means that penalties should fit improper conduct and behavior for similar or like infractions to the extent possible.

   e. Determine the Field Regulation sections violated, if appropriate.

3. Request further investigation or conduct limited inquiries necessary to appropriately and properly dispose of a DAR.

4. Impose sanctions ranging from written reprimands to a maximum of 30 days suspension without pay on the basis of a single DAR.

5. Impose sanctions in excess of 30 days suspension without pay, intertroop transfers, demotions in rank, and dismissal from the Department with the concurrence of the Deputy Commissioner of Administration and by the authority of the Commissioner on the basis of a single DAR, provided, in court-martial cases, the member has elected the grievance procedure rather than a court-martial.

-5-

FR 3-3
3/3/99

    6.    Direct, if appropriate, with the concurrence of the Deputy Commissioner of Administration, that a member be court-martialed.

    7.    Recommend, when appropriate, to the Deputy Commissioner of Administration, that a probationary Trooper be dismissed.

    8.    Perform other duties which are required to ensure that the concept and administration of the discipline system is fair, impartial, timely, and the imposition of discipline is consistent throughout the Department.

    9.    Inform the Commissioner, on a continual basis, as to the effectiveness of the concepts and the compliance with the provisions of the disciplinary system on the part of all personnel.

3.07    **RIGHTS OF MEMBERS**

    A.    <u>General</u>: Members who are formally accused of violating any Department rule or regulation shall be fully informed of the nature of the allegation and the name of the person making the accusation. If the member is to be questioned in regard to the allegation, they must be given the name, rank, and/or position of everyone present during the questioning. The use of threats, offensive language, promise of reward, or any denial of a member's rights is prohibited. Imposition of punishment not in accordance with the provisions of this regulation is also prohibited.

        NOTE: Nothing in this regulation is intended to deny members of their constitutional rights or rights as provided under <u>U.S. v. Garrity</u> or <u>U.S. v. Miranda</u> or other applicable law, nor to deny a member of their rights to Pennsylvania State Troopers Association representation or other rights guaranteed through collective bargaining agreements.

    B.    <u>Criminal Violations</u>: Whenever a member appears to have violated a Department rule or regulation which is correspondingly a violation of the criminal statutes of the United States, this Commonwealth, or another state, members engaged in investigating any such matters shall contact the involved member's Commanding Officer prior to any questioning of the member.

FR 3-3
3/3/99

NOTE: When the involved member is above the rank of Lieutenant, the next highest ranking officer in the chain of command of the member to be questioned shall be contacted prior to any questioning.

C. <u>Grievance</u>: If, after being notified of disciplinary action, a member is dissatisfied with the result of a disciplinary action, they may file a grievance in accordance with the provisions of existing collective bargaining agreements.

D. <u>Punishment</u>: If a member elects to file a grievance, the imposition of the punishment will be administered in accordance with the provisions of existing collective bargaining agreements.

3.08   PROCESSING A DISCIPLINARY ACTION

A. <u>Initiation</u>: All formal disciplinary actions against a member shall be initiated through the preparation and submission of a DAR. The DAR shall only be initiated by a member's **Area or Troop Commander, Bureau or Division Director, or as otherwise designated by the Commissioner**. The DAR shall not be used for any other purpose. The DAR shall not be placed in a member's Troop/Bureau personnel file, or any other file, unless a copy is also submitted in accordance with the provisions of this regulation.

1. In the event multiple infractions occur stemming from the same set of circumstances, all **related misconduct** shall be listed on a single DAR. This shall not be construed to preclude the amendment of a DAR by the member's Troop Commander or Bureau Director, at any time prior to the imposition of penalty by the Disciplinary Officer.

2. The detailed instructions for completing a DAR are included in Appendage A.

B. <u>Copies</u>: Immediately upon initiation of a DAR, the initiating officer shall provide a copy of the DAR to the accused member who shall acknowledge receipt thereof. The initiating officer shall then forward the original DAR, along with any supporting documents including copies of investigative reports, directly to the Disciplinary Officer.

-7-

FR 3-3
3/3/99

    C.    <u>Response</u>: Any member who has acknowledged receipt of a DAR may within ten days thereafter, submit to their Troop Commander or Bureau Director for forwarding to the Disciplinary Officer, a written response. The written response shall be made by correspondence, Form STD-501, to the Disciplinary Officer and shall be considered along with all other documentation before any penalty is imposed by the Disciplinary Officer. All known issues relating to the investigation shall be raised by the member with the investigator or, at the very latest, the pre-disciplinary conference with the Troop Commander or Bureau Director. The contents of the written response to the DAR shall be limited to expressing defenses, mitigating factors, or extenuating circumstances which the member believes the Department should be aware of prior to any disciplinary penalty adjudication.

    D.    <u>Review</u>: The Disciplinary Officer shall review all documentation as stated in this regulation. The Disciplinary Officer is also authorized to request any additional investigation or conduct limited inquiries deemed appropriate in order to properly dispose of the DAR.

    E.    <u>Final Action</u>: The Disciplinary Officer shall indicate on the DAR the final action, which may be **dismissal of charges, written reprimand, suspension without pay, or dismissal from the Department.** The Disciplinary Officer shall take into account all facts listed on the DAR.

    F.    **<u>Dismissal</u>: If a member's misconduct results in their dismissal, the Disciplinary Officer shall ensure the member is advised, in writing, of:**

        1.    **The reason for the dismissal.**

        2.    **The effective date of the dismissal.**

        3.    **Instructions on how to contact the State Employes' Retirement System Office for retirement and health care benefits information.**

        4.    **The fact that the member's official personnel file will indicate that the separation was involuntary and that the particular circumstances of the separation will not be disclosed without the written permission of the member, unless authorized by the Office of Administration, Bureau of Personnel.**

-8-

FR 3-3
3/3/99

3.09   TEMPORARY REMOVAL FROM DUTY

   A.   Serious Violation: When a supervisor reasonably believes that a member has violated any rule or regulation which amounts to a serious violation, and determines that it is necessary to inactivate the member pending an investigation, the supervisor may immediately place the member on restricted status pending further action by the Disciplinary Officer, or a determination is made that the allegation is unfounded. The Deputy Commissioner of Administration shall be notified as expeditiously as possible. The Disciplinary Officer, with the concurrence of the Deputy Commissioner of Administration, may relieve the member of duty and place them in a SUSPENSION with or without pay status pending further action. The Commissioner shall be notified as expeditiously as possible.

   B.   Notification: If a member has been accused of a misdemeanor or felony, or violating the Governor's Code of Conduct, and has been placed in a restricted status, the Disciplinary Officer shall be notified as soon as practical to determine the continued duty status of a member. The Disciplinary Officer, with the concurrence of the Deputy Commissioner of Administration, shall direct the member to return to regular duty status, remain in a restricted status, or be placed in a suspension with or without pay status.

   C.   Suspension: Where removal from duty is required at any time due to the nature of an offense, the Department may suspend a member without pay consistent with provisions of existing collective bargaining agreements.

   D.   Conditions: The following conditions apply when a member is placed on restricted or suspended status:

        1.   **Referral to Member Assistance: Whenever a member is placed on a restricted duty or suspended status which requires the surrender of the member's badge; identification card; issued firearm(s); and any other specified equipment, the member's supervisor shall refer the member to the Member Assistance Program. Members are reminded that none of the established standards of confidentiality for the Member Assistance Program will be compromised.**

-9-

FR 3-3
3/3/99

2. Restriction: Members who have been placed on restricted status shall be subject to any or all of the following conditions, or portions thereof, at the discretion of the superior officer enacting such restriction:

   a. Members may be assigned to perform any police-related duties which in the opinion of their Commander or Director are appropriate. The Commanding Officer may withdraw powers, authority, and responsibilities of the member to the extent the Commanding Officer deems necessary.

   b. Members may be required to surrender any issued equipment to their Troop Commander or Bureau Director, or to their representative.

   c. Subject to the exercise of legal rights, members shall cooperate in all investigations of their conduct and answer all questions pertaining to their position as a Pennsylvania State Police Officer, completely and truthfully and to the best of their ability.

3. Suspension With Pay: Members who have been suspended with pay shall be subject to the following conditions:

   a. They shall immediately surrender their badge, identification card, issued firearm, and any other specified equipment, to their Troop Commander or Bureau Director, or their representative. A suspended member is not permitted to wear any part of the official uniform, or act in the capacity of, or represent themselves as a Pennsylvania State Police Officer in any manner.

   b. Subject to the exercise of legal rights, members shall participate in all investigations of their conduct and answer all questions pertaining to their position as a Pennsylvania State Police Officer, completely and truthfully to the best of their ability.

   c. Members shall be subject to the direct control of their superiors for an amount of time each day of the suspension, equivalent to that amount of time for which the member is being paid. The specific

-10-

FR 3-3
3/3/99

time period will be established by their superior officer.

4. **Suspension Without Pay:** Members who have been suspended without pay shall be subject to the following conditions:

   a. They shall immediately surrender their badge, identification card, issued firearm, and any other specified equipment, to their Troop Commander or Bureau Director, or their representative. Suspended members are not to wear any part of the official uniform, or act in the capacity of, or represent themselves as a Pennsylvania State Police Officer in any manner.

   b. Members shall report at the specified time and place for all disciplinary proceedings.

   c. Any period of suspension without pay imposed to temporarily remove a member from duty shall be taken into consideration in any final administrative action by the Department when a member is found guilty but is not dismissed from the Department.

   d. In the event subsequent action determines a member was improperly suspended without pay, the member will be reimbursed the difference between what they earned from other employment while improperly suspended and what they would have earned as a member of the Department.

   e. Members shall not interfere with, impede, or attempt to interfere with, or impede the investigation of their conduct.

   f. Members placed on suspension without pay may engage in supplementary employment consistent with the provisions of AR 4-17.

   g. Subject to the exercise of legal rights, members shall cooperate in all investigations of their conduct to answer all questions pertaining to their position as a Pennsylvania State Police Officer, completely and truthfully and to the best of their ability.

-11-

CERTIFICATE OF CONCURRENCE/NON-CONCURRENCE

I hereby certify that on January 22, 2003 I contacted or attempted to contact opposing counsel Gregory Neuhauser, Esquire, and sought concurrence in the attached motion. I was unable to reach Attorney Neuhauser by phone, but based upon our previous conversation on or about January 17, 2003 and the indication that the defendants did not at that time concur in the Plaintiff's motion for a new trial, the Plaintiff assumes that the defendants do not concur in this supplemental motion. Additional attempts will be made to obtain concurrence of non-concurrence and an amended certificate filed with the court if necessary. Opposing counsel is requested to call the undersigned upon receipt of this motion to advise of his position regarding concurrence or non-concurrence in the attached motion.

RESPECTFULLY SUBMITTED,

SERRATELLI, SCHIFFMAN, BROWN AND CALHOON, P.C.

By: _____
SPERO T. LAPPAS, Esquire
Pa. Supreme Ct. ID no. 25745
2080 Linglestown Road
Suite 201
Harrisburg, PA 17110-9670
(717) 540-9170
ATTORNEYS FOR THE PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on this date I served a true copy of the attached document upon the person(s) named below by mailing a copy addressed as follows, postage pre-paid, deposited into the U. S. Mail at Harrisburg, Pennsylvania, or by hand delivery to

Gregory R. Neuhauser, Esquire
Office of Attorney General
15th Floor, Strawberry Square
Harrisburg, PA  17120

      RESPECTFULLY SUBMITTED,

      SERRATELLI, SCHIFFMAN, BROWN AND CALHOON, P.C.

By: _____
      SPERO T. LAPPAS, Esquire
      Pa. Supreme Ct. ID no. 25745
      2080 Linglestown Road
      Suite 201
      Harrisburg, PA  17110-9670
      (717) 540-9170
      ATTORNEYS FOR THE PLAINTIFF

January 22, 2003